ALEXANDER H. KERR & CO. v.
UNITED STATES.
No. 9280.

United States District Court
S. D. California, C. D.
April 25, 1951.

George T. Altman, and Martin Gang, of Los Angeles, Cal., for the plaintiff.

Ernest A. Tolin, U. S. Atty., and Eugene Harpole, Special Atty., for the Bureau of Internal Revenue, of Los Angeles, Cal., for the defendant.

BYRNE, Judge.

By this action plaintiff seeks refund of $88,426.88 with interest, alleged to have been erroneously paid as income and excess profits taxes for the calendar years 1940 and 1941.

Plaintiff is a manufacturer of glass jars for home canning purposes. During 1939 it had only one customer, Kerr Glass Manufacturing Corporation, hereinafter referred to as Kerr Glass.

Prior to October 31, 1939 plaintiff sold its jars to Kerr Glass outright. Kerr Glass shipped the jars, together with caps and lids, (which it received from Phoenix Metal Cap Company on consignment basis), to *its* customers on a consignment basis. It will be noted with respect to the goods shipped by Kerr Glass to its customers that it owned the glass jars outright and had possession of the caps and lids as a consignee.

On October 31, 1939 the plaintiff and Kerr Glass changed their method of doing business from an outright sale to a consignment basis so that thereafter Kerr Glass received the jars on consignment from the plaintiff as a result of which it held the entire jar, including caps and lids, on a consignment basis.

At the time of this change in method of doing business Kerr Glass owned a large inventory of glass jars, (almost all of which was in the hands of Kerr Glass customers on consignment), for which it had paid the plaintiff $670,901.78. Concurrently with the change-over to a consignment basis, the plaintiff and Kerr Glass, for the purpose of applying the changed method of doing business to the inventory of jars owned by Kerr Glass, entered into the transaction from which the present controversy stems. This transaction will hereinafter be referred to as the "concurrent transaction".

The "Concurrent Transaction".

On its books, the plaintiff removed $670,901.78 *from its income,* set up an account payable to Kerr Glass in the same amount, and thereafter recorded as income the proceeds from the sale of the jars in the inventory when and as they were sold by Kerr Glass. The glass jars were not returned to the plaintiff. The disposition of the jars by Kerr Glass to its customers was not in any manner affected but was handled as if the transaction had not occurred. The plaintiff reported its 1939 income on the basis of these bookkeeping changes and now contends that this method of recording and reporting its income with respect to the sale of these jars was erroneous.

The taxes involved are the income taxes for 1939 and 1940 and the excess profits taxes for 1940 and 1941. If the "excess profits net income" for 1939 is changed, then the amount of earnings for 1940 and 1941 subject to the excess profits tax is changed. If the method used in recording

and reporting the income was erroneous, the government will not be permitted to keep the tax merely because the result is to its advantage and to the disadvantage of the taxpayer. Thus the question here is whether the "concurrent transaction" in any way affected plaintiff's income for 1939. If it did *not*, then the $670,901.78 should have been reported as income for 1939 and the excess profits taxes for 1940 and 1941 computed accordingly.

█ Plaintiff contends that the "concurrent transaction" did not affect its 1939 income and takes the position that it could not have reacquired the goods from Kerr Glass because Kerr Glass had already sold them to its customers under the consignment contracts which, in fact, constituted conditional sales. The soundness of this interpretation of the Kerr Glass consignment contracts is questionable. I agree that the plaintiff did not reacquire the inventory, but rest my conclusion on a different premise. The plaintiff did not reacquire the goods from Kerr Glass because the "concurrent transaction" was *neither a sale nor a contract to sell*. The transaction could be a sale or a contract to sell only if the parties *transferred or agreed to transfer the property in the goods* from Kerr Glass to the plaintiff. Uniform Sales Act, Section 1721, Cal.Civil Code. It is clear that they did neither.

The defendant agrees that the "concurrent transaction" was a mere bookkeeping memorandum and that the plaintiff did not reacquire the goods. Defendant also recognizes that prior to the "concurrent transaction" the income from these past sales had accrued to the plaintiff. But, argues the defendant, by the "concurrent transaction" the plaintiff changed the time of accrual of this income to later years. It contends that the taxpayer made a change in 1939 which required the consent of the Commissioner of Internal Revenue before it could be used for tax purposes; that the Commissioner has consented to this change, and that both parties are now bound by it. Thus, it is asserted that neither the plaintiff nor the defendant is now at liberty to question the propriety of the way in which the plaintiff reported its income for 1939.

█ The defendant states that prior to October 31, 1939 the plaintiff invoiced jars to Kerr Glass at the time of delivery of the jars and kept its books and made its income tax returns in accordance with that practice. And defendant adds, "This it could not change without the consent of the Commissioner of Internal Revenue", citing Treasury Regulation 103, 1940 Ed., Sec. 19.22(c)–2. The cited regulation deals with inventories and their valuation, and provides, inter alia, that the basis upon which inventories are valued can be changed only after permission is secured from the Commissioner. This regulation is not in point. We are not here dealing with the valuation of inventories. Since both parties agree that plaintiff did not reacquire the inventory, its valuation is not material.

█ The change that occurred on October 31, 1939 was a change in method of operation and not a change in method of accounting or evaluating inventories, and therefore not a change which required the approval of the Commissioner. If we were to assume that it did require such consent, it would not avail the defendant. The plaintiff did not formally apply for permission to use the changed method in computing income. If the Commissioner has never approved this change, then the taxpayer had no right to employ the changed method in computing income for 1939, and the taxpayer should recompute its 1939 income on the old basis. But, says the defendant, when the Commissioner accepted the income tax returns made by the plaintiff in accordance with the new practice, and later disallowed plaintiff's claim for refund, the Commissioner thereby consented to the change or waived the requirement of consent.

The requirement of advance consent for changing from one basis to another is clearly mandatory. Ross B. Hammond, Inc. v. Commissioner, 9 Cir., 97 F.2d 545. However, it has been held that this requirement may be satisfied by the Commission-

er's acceptance of returns prepared on the new basis, *provided that the return gives notice* to the Commissioner that the method originally adopted has been changed. Fowler Bros. & Cox, Inc. v. Commissioner, 6 Cir., 138 F.2d 774. This rule was recognized in the Ninth Circuit in the Hammond case, supra. In the Hammond case it was referred to as a "waiver" by the Commissioner of the requirement of advance consent. The term, "waiver", is more appropriate than the term, "implied consent", since it seems illogical to speak of implied consent when the regulations require express consent.

As seen in the Fowler Bros. & Co. Inc. case, the court held that a waiver would result *if* the return gave notice to the Commissioner that there had been a change. There is nothing in the record to show that plaintiff's returns gave such notice. Therefore, even though it be assumed that the change made by the taxpayer required the Commissioner's consent, there was neither consent nor waiver of the requirement.

■ It is argued by the plaintiff that, for purposes of taxation, once income has been received, it cannot be thereafter deferred. I am inclined to agree with plaintiff's general statement, but it is immaterial in this case because the "transaction" *did not defer income.*

■ It is conceded that plaintiff did not reacquire the inventory. Hence, Kerr Glass remained the owner of the merchandise. In the view of the facts most favorable to the defendant, the plaintiff refunded the purchase price to Kerr Glass and agreed to accept payment as the goods were sold by Kerr Glass. Thus, after giving Kerr Glass credit for the sales price, the plaintiff was returned to the position of an unpaid seller. It had a right to receive the sales price. And as the Supreme Court said in Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200, it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. While it is true that the sales price was not due, "the accrual system wholly disregards due dates." H. H. Brown Co. v. Commissioner of Internal

Revenue, 8 B.T.A. 112. See also Commissioner of Internal Revenue v. Lyon, 9 Cir., 97 F.2d 70, 75, wherein the court stresses that under the accrual system the test is whether the sum is payable in all events, that is, not qualified by a condition precedent or subject to a condition subsequent. It can be said that the *income has accrued even though there are conditions which go to the time or manner of payment, but income has not accrued if the condition goes to ultimate payability.* In the case at bar, the sales price was not due until Kerr Glass sold the goods to its customers. Thus, there was a condition which had to occur before payment was due. But this condition went only to the *time* of payment, not to ultimate payment. There was no condition precedent or subsequent which would discharge the Kerr Glass Company's duty to ultimately pay the price for these goods. Thus, it would seem that the income had accrued to plaintiff and that the refund of the purchase price, (if such it was), in no way changed the time of accrual.

■ The above conclusion is reached after taking the view of the facts that is most favorable to the defendant. That is, the view that plaintiff refunded the sales price to Kerr Glass. The plaintiff takes a different view of the facts, a view which I share. Plaintiff contends that the "concurrent transaction" was a separate transaction wholly unrelated to the original sales of these goods. Hence, it is argued, it did not, or could not, affect them.

The evidence shows that the two companies, (plaintiff and Kerr Glass), were owned by substantially the same persons, (apparently all relatives). Kerr Glass was the sole customer of plaintiff. The directors of the two companies wanted to rearrange the method of operation and of financing inventories. The resolutions of the Boards of Directors of each company recited that the arrangement was being entered into to secure "greater simplicity of financing". One of the directors, one J. A. Bernier, was the sole witness in this case. He testified that the matter of convenience in handling operations on a consignment basis was a major factor in bringing about

the change. It is clear that the "concurrent transaction" did not cancel the prior sales. They had occurred and the directors recognized that they had occurred. Kerr Glass had paid plaintiff for the goods but in order to simplify their operations plaintiff, in effect, made a loan[1] to Kerr Glass which was repaid as Kerr Glass sold the goods. The original sales remained unaffected. Hence, the income from the sales remained unaffected and should have been reported in 1939. To do otherwise would not clearly reflect the taxpayer's income for that year.

Entry of judgment will be withheld permitting the parties to submit computations in accordance with local Rule 7(h).

---

1. The account payable to Kerr Glass which plaintiff set up on its books in the "concurrent transaction" was reduced by the amount of Kerr Glass sales to its customers during November and December 1939, by some miscellaneous cash, and the balance by a note which was paid off in full. Although this item was treated on the books as a debt of the plaintiff, actually there was no debt because the goods were not reacquired by the plaintiff. Consequently the miscellaneous cash and cash paid on the note were advances by plaintiff to Kerr Glass which were refunded when and as Kerr Glass sold the jars to its customers.