**E. I. DU PONT DE NEMOURS AND COMPANY**

v.

**The UNITED STATES.**

No. 443–54.

United States Court of Claims.

Jan. 16, 1957.

David C. Moore, Wilmington, Del., for plaintiff. Charles A. Rittenhouse, III, Wilmington, Del., and Roy A. Wentz, Jr., Wilmington, Del., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D.

Sharpe and George Willi, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff sues to recover interest paid in connection with excess profits tax deficiencies and for interest claimed to be due it on overassessments of excess profits taxes. The petition involves two counts which we will consider separately commencing with the second count.

Count Two of the petition is a claim by the plaintiff for interest on overassessments of excess profits tax for the years 1942 and 1945. This interest was credited by the Commissioner of Internal Revenue against deficiencies in tax for those and other years. The legal issue involved in this count was decided by this court in favor of the taxpayer in Virginia Electric & Power Co. v. United States, 126 F.Supp. 178, 130 Ct.Cl. 189. The Government on brief concedes this issue and the plaintiff is therefore entitled to recover as and for the second count the sum of $92,447.94, as stipulated by the parties.

Count One of the petition is based on a claim for a refund of interest which was erroneously collected on excess profits taxes that were deferred pursuant to law under § 710(a) (5) of the Internal Revenue Code of 1939,[1] which deferment was later revoked prior to a final determination of plaintiff's application for the benefit to be afforded plaintiff by the express provisions of § 722, 26 U.S.C.A. Excess Profits Taxes. The plaintiff, at

1. § 710. *"Imposition of tax*
"(a) *Imposition.*
\* \* \* \* \*
"(5) *Deferment of payment in case of abnormality.* If the adjusted excess profits net income (computed without reference to section 722) for the taxable year of a taxpayer which claims on its return, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, the benefits of section 722, is in excess of 50 per centum of its normal tax net income for such year, computed without the credit provided in section 26(e) (relating to adjusted excess profits net income), the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per centum of the amount of the reduction in the tax so claimed. For the purposes of section 271, if the tax payable is the tax so reduced, the tax so reduced shall be considered the amount shown on the return." 26 U.S.C.A. Excess Profits Taxes.

the time it revoked the option on December 14, 1945, to defer payment of its excess profits tax under § 710(a) (5) (findings 6 and 7), paid the full amount of the tax so deferred, together with interest from the due date of the return to the date of payment on December 14, 1945. This payment of interest was erroneous. Plaintiff now seeks to recover such interest, less amounts of interest previously refunded or credited plaintiff by the Commissioner.

The facts involved in plaintiff's First Count are not in controversy and are as follows:

Plaintiff timely filed its excess profits tax return for the calendar year 1942, together with an application for relief under § 722. Under authority of § 710(a) (5), for which plaintiff qualified, it deferred the payment of $12,995,458.86 in excess profits tax for 1942.

On December 14, 1945, the plaintiff addressed a letter to the Collector of Internal Revenue at Wilmington, Delaware, stating as follows:

"We hereby revoke the option exercised under Section 710(a) (5) of the Internal Revenue Code in our excess profits tax return for 1942 to defer the payment of an amount of excess profits tax equal to 33 percent of the amount of the reduction in tax claimed under Section 722.

"We therefore attach our check for $13,837,137.34 in payment of the amount previously deferred, less the post-war credit attributable thereto, plus interest through December 14, 1945, computed as follows:

| | |
|---|---|
| Amount previously deferred .................. | $12,995,458.86 |
| Less post-war credit attributable thereto....... | 1,299,545.89 |
| Net amount of principal payment..... | $11,695,912.97 |
| Interest on $12,995,458.86 from March 16, 1943 to December 14, 1945, both inclusive ........................... | 2,141,224.37 |
| Total amount of payment...... | 13,837,137.34" |

The above letter was accompanied by plaintiff's check for $13,837,137.34, representing the tax and interest as set forth in the above letter.

Prior to withdrawing the option to further defer the excess profits tax under § 710(a) (5) plaintiff had knowledge of a ruling by the Commissioner of Internal Revenue relating to the allowance of a deduction under § 23(b) of the Revenue Code, 26 U.S.C.A. § 23(b) for interest paid on excess profits taxes which had originally been deferred under § 710 (a) (5) where the option is later revoked and the excess profits tax paid, together with interest from the due date of the return.[2] This rule would also apply as to 1945 and prior years where the

2. Letter of Commissioner of Internal Revenue:

"Reference is made to your letter of November 9, 1945, requesting a ruling relating to the payment of excess profits tax which has been deferred under the provisions of section 710(a) (5) of the Internal Revenue Code, plus accrued interest.

"You state that many taxpayers which have availed themselves of the deferment provision are now considering voluntary payment with interest of the amount so deferred. This action is motivated by the size of the potential interest liability which has already accrued and which may continue to accrue before final determination under section 722 of the Code. A material determination is the question of the time when the deduction for such interest may be taken by a taxpayer on the accrual basis. You inquire whether the interest, if paid this year together

with the principal amount of the tax previously deferred, will be currently deductible under section 23, even though the taxpayer continues to pursue the section 722 claims in connection with which the deferment was originally made.

"Section 710(a) (5) was intended as a relief provision for taxpayers which have filed applications for relief under section 722, and a large part of the income of which is subject to excess profits tax without the benefits of section 722. The use of the deferment provisions is optional at the time the return is filed. A taxpayer may fail to exercise such option and still pursue whatever rights it may have under section 722 within the statutory period for filing such claims. There is no indication in the statute, the *regulatons*, or the legislative history of the provision that the exercise of the option is a binding and irrevocable election.

"It is therefore held that a taxpayer,

application for the benefit under § 722 had been decided in the regular course prior to 1946.

In filing its 1945 tax return plaintiff took this deduction of the interest paid in accordance with the above-referred-to ruling. It is implicit in the Commissioner's letter that in accordance with the statute interest would be refundable on the tax to the extent eliminated under § 722.

On the September 1946, list, the Collector of Internal Revenue for the District of Delaware assessed the tax and interest in excess profits tax so paid for 1942 in the amount of $12,995,458.86, the amount which plaintiff had legally deferred under § 710(a) (5), and he also assessed the interest of $2,141,224.37. This apparently was a technical administrative procedure for the purpose of the collector's record and report, inasmuch as the plaintiff had already paid the tax so assessed, together with interest thereon, since it is clear that no consideration was then given to whether interest was legally collectible.

On February 17, 1948, plaintiff executed a waiver of restrictions on assessment and collection of the deferred tax for the year 1942. The following statement appears on the waiver:

"This represents the amount of excess profits tax payment of which was originally deferred by taxpayer's electing in its 1942 return to utilize the provisions of Section 710(a) (5) IRC. This election was revoked on December 14, 1945 at which time the taxpayer paid the Collector of Internal Revenue, Wilmington, Delaware, the amount previously deferred ($12,995,458.86 less the post-war credit attributable thereto)."

Nothing appears in the record to show why this waiver was executed, but it appears that it may have been done for the record and administrative purposes of the Internal Revenue Service.

Having previously filed an application for the benefit allowed by § 722, plaintiff, on September 27, 1948, filed a claim for refund of excess profits tax which it had paid for 1942, including the payment made on December 14, 1945.

On January 25, 1950, plaintiff received a refund from the Commissioner in final settlement of certain standard issues affecting the income and excess profits tax liability (without regard to relief under § 722) of plaintiff corporation for the year 1942. As a result of this settlement, a part, to-wit, $167,868.39 of the interest paid, with reference to the excess profits tax deferred, on December 14, 1945, was refunded to the plaintiff.

On September 21, 1950, the plaintiff filed with the Commissioner a timely claim for refund which supplemented the claim of September 27, 1948. In that claim it demanded a refund of all interest paid on December 14, 1945, less the $167,868.39 previously allowed by the Commissioner, as above stated.

On April 8, 1952, plaintiff filed a waiver of the restrictions on assessment and collection of any deficiency in tax and acceptance of the overassessments for 1942 attributable to the partial allowance of its claim for refund under § 722. This waiver showed an overassessment had been determined in excess profits tax for 1942 of $11,765,039.06 and a deficiency in income tax for the same year of $5,228,906.25. This waiver also dealt with other years not now before the court nor essential to the determination of the issues here. The waiver expressly reserved to the plaintiff the right to prosecute its claim for refund of the interest as set forth in the supplemental claim filed September 21, 1950.

On December 3, 1952, the plaintiff received from the defendant a certificate of overassessment of excess profits tax for

---

on either the cash or accrual basis, which pays the excess profits tax originally deferred on its return under the provisions of section 710(a) (5) together with the accrued interest thereon, may deduct such interest under section 23(b) for the taxable year in which the payment is made."

1942 showing the following computations:

| | Excess Profits Tax | Tax Interest |
|---|---|---|
| Total assessed | $73,177,917.59 | $2,141,224.37 |
| Correct liability | 60,394,056.42 | 1,801,554.20 |
| Overassessment | 12,783,861.17 | 339,670.17 |
| Less previously allowed | 1,018,822.11 | 167,868.39 |
| Overassessment allowed | 11,765,039.06 | 171,801.78 |

It is plaintiff's contention that under the clear terms of the statute it had a right to the use under § 710(a) (5) of the amount of excess profits tax deferred to the extent eliminated under § 722 and that to the extent the amount deferred did not exceed the benefit finally determined under § 722 it is not liable for interest thereon. This, it contends, is true regardless of the fact that it withdrew or, as it said, revoked, its option to defer beyond December 14, 1945, which was prior to the determination of the benefit due plaintiff under § 722. Plaintiff concedes that interest was owed on $1,230,419.80, from the due date of the return, March 15, 1943, to date of payment, December 14, 1945, which amount represents the difference between the $12,995,458.86 deferred under § 710(a) (5) and the $11,765,039.06, which was the benefit or reduction finally determined to be due plaintiff under § 722. Plaintiff's claim therefore is for the return of $1,598,821.47 in interest paid on $11,765,039.06 from March 15, 1943 to December 14, 1945, which figure is less the interest payments previously credited or refunded plaintiff by defendant. We are of the opinion that plaintiff is correct in its claim.

Defendant admits that had plaintiff not withdrawn its option to defer payment of its excess profits tax under § 710 (a) (5) it would not have been liable to any extent for interest on the $11,765,039.06, but insists that since plaintiff voluntarily withdrew or revoked its option on December 14, 1945, it should be placed in the same position as if it had never deferred any amount under § 710 (a) (5).

Under the ruling in United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, the excess profits tax which is not deferred under § 710(a) (5) is regarded as due at the time taxpayer files his return, and it was held in that case that interest runs on such tax until it is abated by a decision under § 722. The Koppers case is clearly not this case.

In the alternative defendant claims that if we allow plaintiff to recover the interest paid December 14, 1945, on the deferred excess profits tax, such recovery should be reduced by $785,195.48 which represents interest on the deficiency in income tax for 1942, resulting from the § 722 determination, from March 15, 1943, due date of return, to September 16, 1945. This deficiency in income tax results from the overassessment of excess profits tax for that year due to the granting of relief under § 722. The Commissioner assessed and collected interest on the income tax deficiency only from September 16, 1945, to May 8, 1952, as provided by § 292(b), 26 U.S. C.A. § 292(b).[3]

This action of the Commissioner was consistent with his treatment of plain-

---

3. "§ 292. *Interest on deficiencies.*
"(a) *General rule* * * *
"(b) *Deficiency resulting from relief under section 722.* If any part of a deficiency for a taxable year beginning prior to January 1, 1942, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be assessed or paid with respect to such part of the deficiency. If any part of a deficiency for a taxable year beginning after December 31, 1941, is determined by the

Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year (excluding any portion of a deficiency of excess profits taxes constituting a deficiency by reason of deferment of tax under section 710(a) (5), and excluding, in case the taxpayer has availed itself of the benefits of section 710(a) (5), such portion of a deficiency under Chapter 1 as may be determined by the Commissioner to exceed any refund or credit of excess profits tax arising from the operation of section 722), no interest

tiff's withdrawal of the option to defer under § 710(a) (5) as retroactive to March 1943, rather than current. If we hold that plaintiff is entitled to the benefits of § 710(a) (5) up to the time that it withdrew its option, then under this court's decision in Cameron Iron Works, Inc., v. United States, 130 F.Supp. 624, 131 Ct.Cl. 668, the Commissioner was entitled to collect by recoupment interest on the deficiency in income tax for 1942 from the due date of the return to date of payment. Plaintiff resists this alternative claim of the defendant by pleading the bar of the statute of limitation to an assessment and collection of such interest at this time.

In deciding any case involving the question of the liability of a taxpayer for interest on excess profits tax not paid on the return, which tax is later reduced or eliminated by the application of § 722, we look first to the decision in United States v. Koppers, supra. In that opinion the Court held that in an ordinary case interest on unpaid excess profits taxes, computed without the application of § 722, was due the Government from the due date of the return until such time as there was an "abatement" by reason of a decision under § 722. As the Court said:

"* * * Where unpaid taxes are abated by reason of § 722, the taxpayer then receives a release from its existing obligation to pay the amount abated. However, the Government *having been entitled, up to that time, to collect and use the sum abated,* the Government should receive interest, on the abated sum, for the period during which the Government was entitled to have its use. * * *" [348 U. S. 254, 75 S.Ct. 275] [Emphasis supplied.]

In speaking of the 1942 amendment to the Internal Revenue Code, which added § 710(a) (5), the Supreme Court said:

shall be assessed or paid with respect to such part of the deficiency for any period prior to one year after the filing of such

"* * * The 1942 amendment, by its restrictions, fairly meant that, under *all other* circumstances, the existing taxes were to be paid when due, or be subjected to interest during their delinquency under § 292 (a). [In this case from date of withdrawal of the deferment or on the excess of amount eliminated under § 722.]" [Emphasis supplied.]

Applying this express conclusion to the facts in this case, interest is collectible *only* on excess profits taxes that are not later eliminated as unjust and discriminatory under § 722 during the period in which the plaintiff should have paid, and the Government had the right to collect and use, such taxes. However, the Government was specifically denied by express provisions of the statute the right to collect and use excess profits taxes legally deferred under the authority of the 1942 amendment which added § 710(a) (5). This right to the use of the funds deferred is expressly given the taxpayer in anticipation of his being ultimately granted relief under § 722.

The Government calls upon us to hold that plaintiff forfeited any benefits that it might derive from § 710(a) (5) during the period in which the deferment was in effect, i. e., from the date plaintiff filed its 1942 income and excess profits tax return in March 1943, to December 14, 1945, when it decided for good reason to withdraw its option. This would require a holding that the decision to withdraw the option to defer was, notwithstanding the intention of the taxpayer, retroactive to the date in 1943 when its benefits were claimed, putting the plaintiff in the same position as if it had never exercised the option under § 710(a) (5). We cannot agree, and think the statute never so intended, so long as the application remained valid.

Defendant urges that a ruling in favor of the plaintiff would result in a tax advantage to the plaintiff. This, the Government contends, would result from

application, or September 16, 1945, whichever is the later."

the fact that plaintiff got the benefit of a tax deduction for the interest paid in 1945 on the deferred tax, the year in which the interest payment was made.

The year 1945 was the last year of the very high wartime taxes whereby any tax deduction was worth more, tax wise, in that year than in a lesser tax year. If plaintiff had not paid the interest it would have had no deduction and, if allowed to recover here, it will have to include the amount of recovery in its income for the year in which the recovery takes place. This results in a much lower tax liability than if plaintiff had not been allowed the deduction in 1945, since it would have had to pay the higher tax rate on more income in that year. In other words the amount of the deduction would have been income in the year deducted rather than the year of recovery. Having paid interest that was not due and payable, the Government has no right to complain. But having paid it the deduction was proper. The courts cannot rewrite the statutes to the advantage of the Government.

There is nothing in the record to show that plaintiff tried in any way to deceive or mislead the Government or to evade the payment of its correct tax. The administration of the excess profits tax, and the benefits afforded by § 722 and corresponding sections of the Code, was highly complicated and uncertain. In fact it was not until January 1955, when the Supreme Court decided the Koppers case, that it was finally determined that the benefit afforded by § 722, for an unjust and discriminatory tax where there was no deferment under § 710(a) (5), was in the nature of a current abatement of the excessive and discriminatory excess profits tax rather than an elimination as of the return date of a tax that was unjust and discriminatory.

Plaintiff took the course which, in 1945, seemed most advantageous to it in order to lessen its tax liability, which we think it had a right to do. It had no way of knowing at that time what the ultimate benefit to it would be under § 722, or how much interest it would accrue

liability for during the time such relief was being determined under the rule approved in the Koppers case. That this question must have been of prime consideration is borne out by the Commissioner's ruling referred to in footnote 2.

■ Under these conditions it is understandable that a taxpayer would arrange, if possible and legal, to pay the amount deferred under § 710(a) (5) together with any interest he thought might be due thereon in a year in which the payment would result in the greatest tax benefit to the taxpayer. Avoidance of tax is not illegal; willful evasion is. Where it later develops that payment of the interest was erroneous there is nothing in the revenue law to prevent the taxpayer from claiming a refund as long as his claim is filed and prosecuted within the statutory period. The previous year's deduction, honestly though erroneously taken, still stands and the refunded tax becomes income in the year of refund, Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Baltimore Transfer Co. v. Commissioner, 8 T.C. 1. This is entirely fair. Voluntary payment is no longer a defense to claims for refund of taxes voluntarily paid and accepted, § 3772(b), 26 U.S.C.A. § 3772(b).

■ Another contention of the defendant is that § 710(a) (5) was intended to bestow a favor on the taxpayer and as such is subject to forfeiture when revoked. We do not believe that § 710(a) (5) was intended to confer favor, but was to remedy an inequitable situation evolving from the imposition of an excessive, discriminatory, and unjust tax; one that never should have been exacted. This is apparent from a reading of the report of the Senate Committee on Finance, S.Rep. No. 1631, 77th Cong.2d Sess. 205, which accompanied the Revenue Act of 1942, which said:

"Although it is believed advisable to require a taxpayer seeking relief under section 722 to compute and pay its tax without the benefit of such section, there are some cases

in which it would be *inequitable* to compel the taxpayer to pay the entire amount of such tax. Section 710(a) is therefore amended to provide * * *, [see footnote 1 in the instant case]." [Emphasis supplied.]

Prior to the 1942 amendment Congress obviously did not think of or consider this apparent inequitable phase. And Congress stopped short of complete relief as to unjust and discriminatory taxes.

Where a taxpayer met the qualifications imposed by § 710(a) (5) he was allowed to defer his tax. Only certain taxpayers could meet these qualifications and, as to them, the law deems the payment of the tax without some benefit of § 722 inequitable, thus the deferment pending relief. As to those sums allowed to be deferred under this section the Government had no right or claim whatever to the use of the money, to the extent that the amount deferred did not exceed the § 722 relief finally granted. And on that excess it gets retroactive interest. Since the Government never had at any time, prior to the withdrawal or revocation of the option to defer, the right to collect and use the funds deferred, it has no right now to claim interest on them. When at some future date, prior to the granting of the relief under § 722, the taxpayer feels that he is in a position to turn over the deferred funds to the Government he should not be chargeable for interest during the period in which it and not the Government had the right, under the clear and express provision of the statute, to the use of the funds. The revocation was not retroactive and it did not retroactively give the Government a right to the use of the deferred funds, but only gave it the present right to collect and use them. Only at the time of the withdrawal of the option did this right accrue to the United States.

■ Defendant cites some cases standing for the proposition that a taxpayer owes the Government a duty of consistency. But in the circumstances we are of the opinion that it is not applicable to the case now before us. Plaintiff paid its deferred excess profits tax in 1945 together with interest thereon in accordance with a ruling of the Commissioner. Within the statutory time for the filing of a claim for refund plaintiff filed such a claim asking for a refund of the interest which it had erroneously paid. This is neither inconsistent nor deceitful, but merely following a procedure normally to be expected of a taxpayer. This is especially true in light of the uncertainties surrounding the meaning as well as the administration of the excess profits tax and its relief provisions.

We hold that plaintiff had the right to the use of the excess profits tax deferred under § 710(a) (5), to the extent that the amount deferred did not exceed the relief finally determined under § 722. That is all plaintiff claims on this count. The revocation of the option to defer operated currently and prospectively, and not retroactively. Plaintiff therefore is not liable for interest on the deferred tax for the year 1942, paid in December 1945, to the extent that such interest was on amounts not in excess of the relief finally determined under § 722.

■ In view of this ruling, the next question is defendant's right to collect interest on the 1942 deficiency in income tax resulting from the application of § 722, from March 15, 1943 to September 16, 1945. As stated previously in this opinion the correctness of such interest is not in contest, but only the question as to whether the statute of limitation will bar the assessment and collection or recovery at this time.

Defendant concedes that the statute of limitation has run on the time for the assessment and collection, but asserts its claim by way of setoff. It cites Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and this court's holding in Pond's Extract Co. v. United States, 134 F.Supp. 476, 133 Ct.Cl. 43. We are of the opinion that defendant's claim falls within the area in which a setoff, by way of recoupment, must be allowed. In the

494

decision in the Pond's case, supra, we discussed the doctrine of recoupment and the limitations to its application. The recoupment of interest on income taxes, which income tax is the result of an overassessment of excess profits tax due to relief under § 722 involves essentially the same transaction that gave rise to the allowance of plaintiff's claim. The excess profits tax is no more than a super income tax. In fact the profits tax is really only an income tax. We feel this is sufficient to allow recoupment under the "same transaction" theory outlined in the Pond's case, supra.

Defendant may set off the interest due the Government on the deficiency in income tax for 1942 against the refund allowed plaintiff for interest paid on excess profits taxes deferred under § 710 (a) (5) for the same year.

Plaintiff is entitled to recover and judgment will be entered under Rule 38 (c), 28 U.S.C.A. in accordance with the foregoing opinion.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.