**SOUTHWEST EXPLORATION COMPANY, by Signal Oil & Gas Company, Successor through Liquidation, Plaintiff,**

v.

**Robert A. RIDDELL, District Director of Internal Revenue, Los Angeles, California, Defendant.**

No. 63-852.

United States District Court
S. D. California,
Central Division.

July 22, 1964.

Musick, Peeler & Garrett, Melvin D. Wilson, Peter C. Bradford, Los Angeles, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Loyal E. Keir, Thomas H. McPeters, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

On July 19, 1963, Southwest Exploration Company,[1] plaintiff, having duly complied with all conditions precedent, brought this action against Robert A. Riddell, District Director of Internal Revenue, Los Angeles, California, defendant. Plaintiff seeks to recover a portion of the Federal income taxes paid by it for the calendar year 1955.

A full understanding of what is involved in this action requires consideration of disputes rooted in events extending back to 1938.

In 1938 the State of California passed legislation designed to prevent the despoiling of beaches and interference with fishing by those who were developing undersea oil deposits belonging to the State. Plaintiff submitted a bid to the State wherein it sought the right to extract oil from those deposits. It proposed to comply with the State legislation by reaching the deposits by means of slant drilling from upland shore sites. Since the plaintiff did not own the land

1. Plaintiff was dissolved and liquidated into Signal Oil & Gas Co. on December 31, 1961, but exists for the purpose of bringing this action by virtue of Section 5400 of the California Corporations Code.

**16**

from and through which it proposed to drill, it entered into certain agreements with the owners of the property. After defining "net profits" the agreements provided that the land owners would receive a certain percentage of plaintiff's net profits from extraction and sale of the oil. The State of California accepted plaintiff's bid and it began operation under the agreements.

A dispute over who was entitled to depletion on the percentage share of the net profits arose almost immediately. Plaintiff declared that it was entitled to depletion on that portion of the profits, and treated the payments to the land owners as mere expenses. On the other hand, the land owners declared that they were entitled to depletion on the percentage share. Actions involving the disputed taxes for the calendar years 1939 through 1945 were commenced. In Southwest Exploration Co. v. Commissioner, 18 T.C. 961 (1952), affirmed 220 F.2d 58 (9th Cir. 1955) it was held that plaintiff was entitled to take depletion of the percentage of profits, for the land owners had no economic interest in the oil. However, in Huntington Beach Co. v. United States, 132 Ct.Cl. 427, 132 F. Supp. 718 (1955) it was held that one of the land owners was entitled to a depletion allowance on its share of the net income. Since it was clear that both were not entitled to depletion, the Supreme Court granted certiorari in both cases. On February 27, 1956, the Court decided that plaintiff was not entitled to depletion on the percentage of net profits and that the land owners were. Commissioner v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956). In reaching its decision the Court analyzed the agreements between the parties and decided that as a question of "economic realities" the land owners had an interest in the oil. Thus, the proper treatment of the percentage of net profits for tax purposes became crystal clear. On mandate of the Ninth Circuit Court of Appeals the Tax Court of the United States entered final judgment against plaintiff on August 7, 1956.

During the years when the disputes over the 1939–45 taxes were pending, the plaintiff continued to take the position that it was entitled to depletion on all of the oil profits, including the percentage of net profits which was paid to the land owners. Therefore, on its Federal income tax returns for the calendar years 1950 through 1954 plaintiff took the position that it was entitled to a total depletion deduction greatly in excess of the amount ultimately determined to be proper by application of the 1956 decision of the Supreme Court. [The excess amount was $3,817,949.98.] On March 19, 1957, defendant issued his Revenue Agent's Report containing the proper computation of plaintiff's depletion allowance. The corrected computation was made by simply deducting the amount paid to the land owners from the gross income per plaintiff's returns, rather than treating it as a mere expense of operation. Interest was owed on the deficiency, and both the deficiency and the interest were paid during the year 1957.

In the Revenue Agent's Report of March 19, 1957, the defendant also told plaintiff for the first time that it was not entitled to deduct, as a current expense of its Oklahoma operations, a certain amount of intangible drilling costs [$224,755.57], which plaintiff had deducted in its tax return for the calendar year 1954. This asserted deficiency was unrelated to the depletion question, and was simply another item uncovered by the defendant's agents while they were auditing the plaintiff's 1954 return. Interest was assessed on this asserted deficiency also, and plaintiff paid both the deficiency and the interest during the year 1957.

Of course, during the years that plaintiff was asserting its view as to the proper depletion allowance for Federal income tax purposes, it was taking a similar view regarding the proper allowance for State of California franchise tax purposes. Thus, plaintiff's State franchise tax returns for the calendar years 1950 through 1954 included a depletion deduc-

tion which was $3,994,633.72 greater than the amount which was finally allowed. On June 28, 1957, the State Franchise Tax Board (the Board) issued notices of proposed additional tax, based upon an audit of plaintiff's returns, which was commenced some time after January 1, 1957. The Board followed the decision of the United States Supreme Court, and it was this that caused the depletion allowance deficiency. Plaintiff paid this State tax and the interest thereon in 1957. The Board also determined that plaintiff had taken an excessive deduction for Oklahoma drilling costs on its 1954 return, and found that a deficiency arose out of that error. [The excess amount was $465,001.38.] This deficiency was first called to plaintiff's attention in 1957, and the additional tax and interest due thereon were paid in that year.

During the year 1956 another matter was being negotiated between plaintiff and defendant's agents. This negotiation concerned a reduction in plaintiff's excess profits taxes for the calendar years 1940 through 1945 and a deficiency proposed by defendant's agents for the years 1941 through 1945. The litigation over the proper depletion allowance for the years 1939–1945, which finally culminated in the Supreme Court decision of February 27, 1956, was indirectly related to the matters involved in this negotiation. However, it was only one of several factors utilized to establish the excess profits tax liability for the years 1941 through 1945. On November 26, 1956, plaintiff executed defendant's form No. 870–AD. This form was entitled "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment." The form itself made it perfectly clear that it was merely an offer, and that it would not be accepted until the Joint Committee on Internal Revenue Taxation gave its approval thereto. The plaintiff thereby agreed to waive restrictions on assessment and collection of Federal income and excess profits tax deficiencies of $815,275.96 in return for

allowance by defendant of a corresponding overassessment of excess profits taxes in the amount of $820,311.43. On or about August 6, 1957, plaintiff was notified that the Joint Committee had accepted the offer after considering it since about June 20, 1957. Interest was due on both the overassessment and on the deficiencies.

One further item of interest became due in 1957. That was the amount of $1,928.46, which accrued on the 1939–1945 deficiency during 1957, before the deficiency was paid.

On or about June 15, 1956, plaintiff filed its Federal income tax return for the calendar year 1955. The depletion allowance taken on this return was computed in accordance with the Supreme Court's decision of February 26, 1956. The income tax liability for 1955 was duly paid.

During the calendar year 1957 plaintiff sustained a net operating loss, which it sought to carry-back to the calendar year 1955, pursuant to 26 U.S.C. § 172. Plaintiff asserts that the operating loss is composed of the following items: (1) an undisputed net loss item [$87,674.-53]; (2) the aforementioned interest on the 1950–1954 Federal income tax deficiencies; (3) the aforementioned additional California franchise taxes and interest thereon; (4) the aforementioned interest on Federal tax deficiencies from 1941 through 1945 less interest on the overassessments from 1940 through 1945; and, finally, (5) the aforementioned interest on the 1939–1945 Federal income tax deficiency. Defendant, for the most part, disallowed these items, with the exception of the first. However, pursuant to a stipulation of the parties, defendant now agrees that the fifth item should have been allowed also. Thus, only items (2) through (4) remain in controversy.

Defendant does not dispute the amount of the items involved. Nor does he claim that they are not proper deductions under 26 U.S.C. §§ 163 and 164. His sole contention is that each of these items accrued in 1956 rather than 1957. Since

plaintiff uses a calendar year accounting period and the accrual method of accounting, defendant asserts that the deductions must be taken in 1956 rather than in 1957. Therefore, he argues, the amounts of tax and interest involved cannot be carried back from 1957 to 1955 pursuant to the provisions of 26 U.S.C. § 172.

■■ The general principles applied to accrual method taxpayers are well stated in the Treasury Regulations. Regulation 1.446–1(c) (1) (ii) states:

"Generally, under an accrual method, income is to be included for the taxable year *when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy.* Under such a method, deductions are allowable for the taxable year in which *all the events have occurred which establish the fact of the liability* giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. (Emphasis supplied)

And Regulation 1.461–1(a) (2) states, in pertinent part:

"Under an accrual method of accounting, an expense is deductible *for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. . . .* While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy." (Emphasis supplied)

The concepts set forth in these Regulations are well supported by the cases. See e. g., Commissioner v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831, rehearing denied, 334 U.S. 813, 68 S.Ct. 1014, 92 L.Ed. 1744 (1948); Commissioner v. H. B. Ives Co., 297 F.2d 229 (2d Cir. 1961), cert. denied, 370 U.S. 904, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962); Wolfington Body Co. v. Smith, 99 F. Supp. 788 (E.D.Penn.1951); and Alexander H. Kerr & Co. v. United States, 97 F.Supp. 796 (S.D.Cal.1951).

■ If any substantial contingency to the fixing of liability remains, it cannot be said that all events have occurred, and the liability cannot be accrued. This is true although there is a good possibility that some liability will occur. See Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), where a taxpayer was not allowed to deduct a portion of rebatable overriding commissions in the year of receiving them, even though it was likely that some unknown portion would have to be returned later. But compare, Frost Lumber Industries v. Commissioner, 128 F.2d 693 (5th Cir. 1942), where the court pointed out that an accrual taxpayer can (and must) take his gain or loss when the amount is reasonably certain and determinable. As the court said:

"Though the computation may be undetermined, if the basis for the computation is unchangeable and though the exact amount may be unknown, if it is not unknowable, the item in such cases is to be treated, for tax purposes, as accrued income." [p. 694]

Similarly, in Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111 (1932) the Supreme Court stated that an item had to be accrued in the year that the facts were well established and the law was known, for the taxpayer could "ascertain the *quantum* of the award within reasonable limits" in that year. [p. 296, 52 S.Ct. p. 531]

■ But, a classic example of a contingency which will prevent accrual arises when the liability itself is disputed by the taxpayer—particularly when the matter is in the process of being litigated. See, Lucas v. American Code Co.,

280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538 (1930), and Allegheny Steel Co. v. United States, 18 F.Supp. 398 (Ct.Cl.1937).

Of course, interest is treated in the same way. It too may only be accrued when the amount and fact become reasonably fixed and certain. See, Newaygo Portland Cement Co. v. Commissioner, 27 B.T.A. 1097 (1933), affirmed on other gnds., 64 App.D.C. 278, 77 F.2d 536 (1935). So, for example, if the amount of liability is in issue in a litigation, interest on that amount will not accrue until the controversy is settled. See, Allegheny Steel Co. v. United States, supra.

The law which is applied when a tax liability is involved is merely an application of these principles. In fact, the "all events" test was first set out by the Supreme Court in a tax liability case. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). In Anderson the taxpayer had sold munitions subject to tax in 1916. However, the tax on the sale did not become due until 1917, and the taxpayer claimed that the liability did not accrue until that year. The Supreme Court answered, at pages 440–441, 46 S.Ct. at pages 134:

> "Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it."

And the Court has also applied this concept to tax controversy cases. See, United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356, rehearing denied, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 86 (1961); Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); and Security Flour Mills Co. v. Commis-

sioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944). In Dixie Pine the taxpayer had been contesting its liability to pay a certain state tax, and the Court indicated that the fact and amount of liability for a tax could not be fixed while a contest was in progress. The taxpayer was required to, "await the event of the state court litigation and * * * claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." [320 U.S. p. 519, 64 S.Ct. pp. 365–366] And in Security Flour Mills the taxpayer was contesting the constitutionality of a federal tax. The Court refused to allow the taxpayer to accrue an expense for the amount of that tax while the contest was in progress. See also, Globe Tool & Die Mfg. Co. v. Commissioner, 32 T.C. 1139 (1959).

As might be expected, a very important facet of the "all events" test is the requirement that events which occur in years after the taxable year cannot be looked to for the purpose of determining the accrual of an item during the taxable year itself. If this were not true the whole all-events concept would be undermined. If later events were allowed to characterize the expense or income item then, for example, the events of a year in which a controversy ended could be reflected back to earlier years for the purpose of accruing liability and interest. That is not permissible. See, Security Flour Mills Co. v. Commissioner, supra; Camilla Cotton Oil Co. v. Commissioner, 31 T.C. 560 (1958); and Baltimore Transfer Co. v. Commissioner, 8 T.C. 1 (1947). See also, Freihofer Baking Co. v. Commissioner, 151 F.2d 383 (3d Cir. 1945). As Rev.Rul. 55–731 states: " 'The propriety of the accruals must be judged by the facts which petitioner knew or could reasonably be expected to know at the closing of its books for the taxable year.' "

Since a contest over a tax will prevent its accrual it is necessary to know when a contest is in progress. Of course, when the question of liability for a tax is being litigated in good faith a contest is in progress. But the definition

of a contest need not be, and is not, limited to a dispute which has reached the courts. Indeed, a law suit is very often a last resort. The definition of "contest" has been treated quite expansively by all concerned. Thus, a dispute formally lodged with the tax authorities will give rise to a contest. See, G.C.M. 25298, 1947–2 C.B. 39 and Great Island Holding Corp. v. Commissioner, 5 T.C. 150 (1945). And, of course, if a taxpayer disputes the amount of an asserted tax he is disputing his liability to pay that amount, and a contest results. Lehigh Valley R. R. Co. v. Commissioner, 12 T.C. 977 (1949). Moreover, by merely submitting a return showing that a certain tax is due the taxpayer asserts that no more than that is due. Thus, if he has made the assertion knowingly and in good faith, there is *ipso facto* a good faith contest as to any amount over that which is shown on his return. Thus, until the taxpayer accedes to the assessment of a greater amount, he is contesting that amount, and cannot accrue it. See, Agency of Canadian Car and Foundry Co. v. Commissioner, 39 T.C. 15 (1962), and Gunderson Bros. Engineering Corp. v. Commissioner, 16 T.C. 118 (1951). In short, any time there is a good faith dispute as to the law or as to proper evaluation of the facts which determine the taxpayer's tax liability there is a contest. See Rev.Rul. 57–105, 1957–1 C.B. 193. But assuming that a good faith contest has begun, one still must determine when it ends, for it is in that year that the tax or interest thereon will accrue. If a contest is carried into the courts it is said that it ends when the judgment becomes final. That does not mean when the trial court has handed down its decision. If the case is appealable the judgment will not be considered final, for tax purposes, until the time for appeal has expired. Commissioner v. Fifth Avenue Coach Lines, Inc., 281 F. 2d 556 (2d Cir. 1960), cert. denied, 366 U.S. 964, 81 S.Ct. 1915, 6 L.Ed.2d 1256 (1961). See also, National Biscuit Co. v. United States, 140 Ct.Cl. 443, 156 F. Supp. 916 (Ct.Cl.1957). And a contest will determine in the year that a final agreement is reached between the taxpayer and the taxing authorities. See, G.C.M. 9575, X–1 C.B. 381 (1931). Whether it can determine at an earlier point will be considered below. That is the most serious question now presented to this Court.

The rules applied to the accrual of interest in other cases apply in tax cases also. Thus, where there is a contest over a Federal tax deficiency, the interest on that deficiency is accrued in the year the contest terminates. Until then the debt is disputed and interest on the debt cannot accrue until the dispute ends. Rev.Rul. 57–463, 1957–2 C.B. 303, and G.C.M. 9575, X–1 C.B. 381 (1931). See, Gunderson Bros. Engineering Corp. v. Commissioner, 16 T.C. 118 (1951); H. E. Harman Coal Corp. v. Commissioner, 16 T.C. 787 (1951); and Lehigh Valley R. R. Co. v. Commissioner, 12 T.C. 977 (1949). The same rule applies to a dispute over a state tax deficiency.

Each of the items contested by plaintiff and defendant will be considered with these concepts and principles in mind.

*Interest on the 1950 through 1954 Federal income tax deficiency.*—It will be recalled that the 1950–1954 Federal income tax deficiency is composed of two items: (A) the depletion deduction deficiency; and (B) the Oklahoma intangible drilling expense deficiency. Since these two items are not related they will be considered separately.

(A) *The depletion deduction deficiency.*—This deficiency arose because the plaintiff claimed the right to depletion on the portion of net profits it was paying to the land owners. Plaintiff points out the fact that although the Supreme Court decided in 1956 that it was not entitled to take depletion on that amount, the decision was only directly concerned with the calendar years 1939–1945. Commissioner v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395 (1956). Thus, says plaintiff, the decision could not possibly have determined the contest

over the tax years 1950–1954. Defendant does not deny that there was a contest until 1956, but claims that it ended upon the rendering of the Supreme Court's decision.

Before the Supreme Court handed down its decision, the battle lines between the parties were clearly drawn. The dispute was over the single question of who was entitled to depletion on the portion of net profits paid to the land owners. This dispute defined the contest between the parties. Once the decision was handed down there was no true good faith dispute remaining. The Supreme Court had construed the agreements and declared their legal effect. That effect would not change from year to year. It was then fixed. It is well established that once the law and the facts are both known with reasonable clarity the amount of liability accrues. See, Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111 (1932). That was the case here. The Supreme Court did not enunciate new principles with vague contours, which would have to be hammered out on a situation by situation basis. Cf. the recent reapportionment cases, Reynolds v. Sims, 84 S.Ct. 1362 (U.S.Sup.Ct. June 15, 1964), et al. The decision in Southwest Exploration was the kind that courts are particularly well equipped to make. It was a decision on a single concrete set of facts and upon a single form of agreement. Once the agreement was construed the answer was both precise and clear. Plaintiff was not entitled to depletion on the amounts paid to the land owners. That was all there was to it.

But plaintiff says that there was still a contest in existence, for its return showed one amount and it did not acquiesce to a larger amount until 1957. It says it could have still contested the amount of its liability for 1950–1954, even though the Supreme Court had made a decision as to its 1939–1945 liability. But a contest must be in good faith, and it is difficult to see how plaintiff could continue to contest this question in good faith after the Supreme Court decision. It is true that the doctrine of res judicata does not preclude a contest over one year's taxes simply because the same general questions were raised in an earlier year. Stoddard v. Commissioner, 141 F.2d 76 (2d Cir. 1944), modified on other gnds., 152 F.2d 445 (2d Cir. 1945). But if plaintiff had sought to relitigate the questions involved in the 1939–1945 agreements it would no doubt have been met with a plea of collateral estoppel. See, Commissioner v. Sunnen, (1948), 333 U.S. 591, at pp. 597–602, 68 S.Ct. 715, 92 L.Ed. 898, where the Court discusses the meaning and application of this doctrine in tax cases. Of course, collateral estoppel is not a doctrine which operates *ipso facto*. It is only mentioned here by way of indicating the unrealistic nature of a claim that a bona fide contest still existed between plaintiff and defendant after the 1956 Supreme Court decision. Cf. Charles Leich and Co. v. United States, Ct.Cl., 329 F.2d 649, rehearing denied, Ct.Cl., 333 F.2d 871 (1964). It is true that Lehigh Valley R. R. Co. v. Commissioner, 12 T.C. 977 (1949) may seem to be in conflict with this view, for there the same questions were litigated for separate tax years and the tax determined in each was deducted in different years. But that case is distinguishable. In Lehigh even the judge who tried both cases did not think that the decision in one controlled the other. He was, however, reversed. Compare, Central R. Co. of New Jersey v. Martin, 30 F.Supp. 41 (D.N.J.1939), reversed, 115 F.2d 968 (3d Cir. 1940), cert. denied, 313 U.S. 568, 61 S.Ct. 943, 85 L.Ed. 1527 (1941), with Lehigh Valley R. Co. of New Jersey v. Martin, 19 F.Supp. 63 (D.N.J.1936), affirmed, 100 F.2d 139 (3d Cir. 1938), cert. denied, 306 U.S. 651, 59 S.Ct. 592, 83 L.Ed. 1049, rehearing denied 306 U.S. 669, 59 S.Ct. 784, 83 L.Ed. 1063 (1939). Where there is so much confusion and doubt it *may* be proper to accrue the liabilities in different years. However, even if that were true, it has no application to the case now before this Court.

What plaintiff's contention must therefore boil down to is an assertion that, although both law and facts were clear and truly undisputed, the defendant's tardiness in making a computation caused the interest on the deficiency to accrue in 1957. That is not the law. Plaintiff knew both law and facts and its liability was reasonably fixed. Only a mere mathematical computation remained to be made, and the results of it were unmistakable. Plaintiff and defendant both knew that; no real contest or dispute remained. The vague suggestion that there was a contingency, for, perhaps, defendant would not assess the added tax, is too fanciful to require comment, particularly in view of the lengthy litigation which preceded the Supreme Court's decision.

Therefore, since both the applicable law and the facts were abundantly clear in 1956, and only a mere mathematical computation remained to be performed, plaintiff should have accrued the interest on its Federal depletion deduction deficiency in that year.

 (B) *The Oklahoma intangible drilling expense deficiency.*—As indicated above, plaintiff's Federal income tax return for the year 1954 included a deduction for intangible drilling costs incurred by plaintiff on its Oklahoma operations. When defendant audited plaintiff's return for 1954, he determined that plaintiff was not entitled to deduct the full amount of this expense. Plaintiff was informed of this in 1957, acquiesced in that year, and paid the amount due with interest. Defendant, for some unarticulated reason, claims that the interest on this deficiency accrued in 1956. Application of the general principles, which have already been discussed, make it clear that it did not.

Defendant does not assert that plaintiff claimed the full amount of the Oklahoma intangible drilling expense unknowingly or in bad faith. That being the case, a contest came into being as soon as the defendant decided that a different amount should be allowed, for plaintiff can be taken to have disputed any assertion that a lesser amount was proper. See, Gunderson Bros. Engineering Corp. v. Commissioner, supra, and Rev.Rul. 57–105, 1957–1 C.B. 193. It was quite impossible for that contest to come to an end before plaintiff even knew that its deduction was in dispute. Moreover, it is fundamental that what happened in 1957 cannot be looked to for the purpose of determining accrual in 1956. How could the plaintiff be expected to accrue a liability it had not even heard about, one it did not know was in existence? Cf., Camilla Cotton Oil Co. v. Commissioner, supra.

Why the defendant chose the year 1956 to assert accrual of this item is something of a mystery. What event occurred in 1956? The facts do not affirmatively show that defendant's agents discovered the deficiency in 1956. But even if they did a different result would not be required. It cannot be contended that the defendant could choose any year he wished to cause accrual of the interest. If, for example, he discovered this deficiency in 1955, would it be argued that it accrued in that year? If defendant could do that, the time of accrual would be subject to much more arbitrary manipulation than it is today.

Therefore, since the plaintiff was not informed of any deficiency due to its Oklahoma intangible drilling expense deduction until 1957, it could not accrue the interest on the deficiency until that year.

*California franchise taxes and related interest for the calendar years 1950 through 1954.*—It should be recalled that plaintiff's California franchise tax deficiency was composed of two items: (A) the depletion deduction deficiency; and (B) the Oklahoma drilling expense deficiency. Since these two items are not related they will be considered separately.

 (A) *The depletion deduction deficiency.*—While plaintiff was claiming the right to depletion on the amount of royalty that was paid to the land owners for Federal income tax purposes, it was also making the same assertion for the

purpose of its State franchise taxes. After the United States Supreme Court handed down its decision in 1956, which determined the matter for federal purposes, the California State Franchise Tax Board (the Board) decided to apply the same rule for State franchise tax purposes. Of course, this made the plaintiff liable for further State franchise taxes, plus interest. However, the Board did not commence its audit until 1957, and in that year informed plaintiff of the results thereof. Plaintiff duly paid the additional tax and interest.

Here defendant states that the Supreme Court's 1956 decision was the event which finally accrued the plaintiff's State franchise tax. This position cannot be sustained. It is one thing to say that the Supreme Court's decision determined the question for Federal tax purposes. It is very different to say that it determined it for State purposes.

The State of California is a separate political entity, and the Board administers the State's tax law. That is a separate law, which is not dependent upon the Federal Internal Revenue Code. See, Calif.Rev. & Tax Code, § 17681 et seq. The California tax was not before the Supreme Court and the Court did not determine any disputes arising under it. Indeed, unless a federal question was involved, it could not. Neither the Board nor the California courts were required to follow the Supreme Court's decision. If the Board did follow that decision, the plaintiff could have appealed.

When the Supreme Court construed plaintiff's agreements with the land owners it looked to what it considered the economic realities, and did not think that a specific provision that the land owners did not acquire a share in the oil deposit was important. See Southwest Exploration, supra, page 311. The State courts might have been willing to give a different effect to this provision for State tax purposes.

Thus, it cannot be said that the contest between plaintiff and the State of California taxing authorities was resolved by the Supreme Court's decision. That being true, the contest was not finally ended until 1957, when the Board made its assessment and plaintiff acquiesced and paid. Since the contest did not end until that year, plaintiff could not accrue the amount of tax and interest due until 1957. See, Dixie Pine Products Co. v. Commissioner, supra, and Globe Tool & Die Mfg. Co. v. Commissioner, supra.

It should be noted that the parties have not stipulated to what was done by the Board or by the plaintiff with regard to other years (e. g., 1939–1945). But that would not make a substantial difference. Plaintiff could properly accede to an adverse interpretation by the Board for one year, and still contest it as to another. The fact that it might have been *unlikely* that plaintiff would continue to carry on a contest as to 1950–1954 can make no difference. The fact is that nothing stood in the way of such a contest, and plaintiff could have gone forward with it in all good faith. See, Commissioner v. Fifth Avenue Coach Lines, Inc., supra.

(B) *The Oklahoma intangible drilling expense deficiency.*—Plaintiff's State franchise tax return for the year 1954 included a deduction for intangible drilling costs incurred by plaintiff on its Oklahoma operations. When the Board audited plaintiff's return for 1954 it determined that plaintiff was not entitled to the full amount of this expense. Plaintiff was informed of this in 1957, acquiesced in that year, and paid the amount due with interest.

From all that has been said regarding the Oklahoma intangible drilling expense deficiency for Federal income tax purposes, and the application of the general principles discussed herein to State taxes, it is clear that plaintiff was required to accrue the additional tax and interest arising out of this deficiency in 1957, and not in 1956.

*Interest on Federal income and excess profits tax deficiencies and overassessments for the years 1940 through 1945.*— During 1956 the plaintiff and defendant negotiated certain tax deficiencies and overassessments covering the years 1940–1945. The parties have stipulated

that while the Supreme Court's 1956 decision was indirectly related to the matters involved in this negotiation it did not, by any means, settle them. As a matter of fact it is said that it was merely one of several factors involved in the negotiation. According to the parties' stipulations, the Supreme Court decision cannot be taken to have terminated the dispute between the parties which was involved in this negotiation. That seems reasonable since the Supreme Court's decision covered those same exact years and yet neither party then treated it as ending the need for negotiations and agreements.

■■■ On November 26, 1956, the plaintiff "offered" to waive restrictions on assessment and collection of certain deficiencies in taxes in return for the allowance by defendant of certain overassessments. The offer was on defendant's Form 870–AD, was designated as an "Offer", and contained the following clauses, among others:

"This offer is subject to acceptance by or on behalf of the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect."

Another portion of the form stated:

"Accepted as of the date The Joint Committee on Internal Revenue Taxation approves the overassessment concurrently determined on [the] basis of closing this case."

The offer was not, in fact, accepted by the Joint Committee until 1957. However, defendant claims that the interest on the deficiencies referred to in that offer accrued during 1956. By the same token, the interest on the refund of overassessments contained in that offer would be said to accrue in 1956 if defendant's contentions are correct. See e. g., E. I. Du Pont De Nemours v. United States, 137 Ct.Cl. 191, 147 F.Supp. 486 (Ct.Cl. 1957).

Since it is agreed that the Supreme Court's decision of 1956 did not decide the matters involved in this offer, what event occurred in 1956 that did settle those matters? Surely, the mere fact of the offer did not do so, for it expressly stated that it had no force or effect whatever until it was accepted. Such statements mean what they say. See, United States v. Goldstein, 189 F.2d 752 (1st Cir. 1951). Cf., Commissioner v. H. B. Ives Co., supra, regarding offers in general.

The only possible contention is that since plaintiff was able to make an offer it must have been able to make a computation with sufficient certainty to allow accrual on its books. But that cannot be true. The very form of the offer shows that the parties were not yet in agreement. There was still a contingency. If the offer had been rejected the whole matter would have remained unresolved and subject to more negotiation, at least. This was a real contingency. Plaintiff did not have a right to have its offer accepted, and it would hardly have been proper to accrue the items at that time. Of course, the fact that the offer was ultimately accepted cannot be looked to, since reflection back theories are long since discredited.

If defendant were correct, the plaintiff would have to accrue items of income and expense on its books in 1956. Then if the offer were rejected in 1957, it might have to make another accrual of income and expenses in 1957. And when matters were finally settled another accrual would have to be made. Such procedures need not be followed by taxpayers.

Since no event occurred in 1956 which had the effect of fixing the matters contained in the offer with reasonable certainty, it was proper for the plaintiff to accrue them in 1957 when its offer was finally accepted.

The plaintiff was entitled and required to accrue the following items, which are in dispute here, in 1957: (1) California franchise taxes and related interest for the years 1950–1954; (2) interest on Federal income tax deficiencies and overassessments for the years 1940–1945; and (3) interest on the Oklahoma intangible drilling expense Federal income

tax deficiency for the year 1954. Plaintiff was entitled and required to accrue interest on the Federal depletion deduction deficiency for 1950–1954 in 1956.

The findings of fact and conclusions of law appearing in this memorandum of decision shall serve as the findings and conclusions, (see Rule 52 F.R.Civ.P.) and no additional findings shall be required.

Counsel for the parties shall make the required computations as provided in Rule 7(h) of the Rules of this Court and shall lodge a judgment approved as to form by both parties.