NATIONAL BISCUIT COMPANY

v.

UNITED STATES.

No. 49752.

United States Court of Claims.

Dec. 4, 1957.

Montgomery B. Angell, New York City, for plaintiff. Wallace S. Jones and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, were on the brief.

Harlan Pomeroy, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

JONES, Chief Judge.

This is a suit for the refund of excess profits taxes alleged to have been improperly assessed for the years 1941 and 1942 in the amounts of $105,678.47 and $151,391.08, respectively, with interest.

In 1941 and 1942, plaintiff timely filed its excess profits tax returns and in those returns the excess profits tax credit was computed on plaintiff's average base period net income for the base period years 1936–1939, inclusive. The problem for the court is the correct determination of the excess profits tax credit which of necessity depends upon a correct statement of the income during the base period. There is some confusion as to just what the proper income for that period is, because of the uncertainty of treatment for the years 1935 and 1936 of certain processing taxes which were due the Government, and paid or accrued by the plaintiff, in 1935, but which were declared unconstitutional by the Supreme Court on January 6, 1936. United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477.

During the year 1935, the plaintiff accrued on its books, as part of the cost of goods sold, processing tax liabilities for wheat processed by it into flour or cereals for the months of June through December 1935, in the amount of $227,-640.73. However, the collection of these taxes by the Government was enjoined by order of the District Court for the

Southern District of New York in a suit by plaintiff until such time as the United States Supreme Court decided the Butler case, supra. The order, however, required the plaintiff to give bond to the Government for the amount of the taxes. The bonding company, in return, required the plaintiff to deposit into an escrow account in the joint names of the bonding company and the plaintiff an amount equal to the amount of the taxes due. Of the aforementioned $227,640.73, $29,754.28 was not deposited in the escrow account, since that amount represented the December 1935 taxes which were not due until January 31, 1936. By that time the Supreme Court had rendered its decision in the Butler case. Plaintiff accrued that amount on its books as part of its cost of goods sold in 1935.

During 1935, plaintiff also paid $1,121,629.03 in processing taxes to companies from which it had made purchases prior to 1936 of flour and other commodities, the manufacture of which had been subject to processing taxes. These taxes were passed along to the purchaser as part of the purchase price. The purchaser in this case, of course, was plaintiff. Of that amount $1,078,-950.60 represented processing taxes paid to the National Milling Company, a wholly owned subsidiary of the plaintiff, and the balance, $42,678.43, represented the amount paid to vendors other than the National Milling Company.

It was agreed between plaintiff and the National Milling Company and the other vendors that, should the Supreme Court declare the processing taxes unconstitutional, the amounts which represented processing taxes and which were paid the respective companies as part of the increased purchase price would become the property of plaintiff or be credited to it.

During the year 1935, the plaintiff accrued on its books all of the amounts referred to above, a total of $1,349,269.-76, as part of its cost of goods sold. On its 1935 income tax return, filed in 1936 after the Butler decision, it reported

only $42,678.43 in the cost of goods sold. This was the amount paid as processing taxes to the vendors other than National Milling Company. Plaintiff, on the 1935 return, excluded from the cost of goods sold the balance, $1,306,591.33, which had been previously accrued on its company books. By excluding these amounts, plaintiff's income and income tax for that year were, of course, increased. On a later examination of plaintiff's tax return for 1935, the Commissioner added the amount of $42,678.-43 to its net income. This had the effect of eliminating from plaintiff's cost of goods sold the amount paid to the other vendors in processing taxes. None of the amounts referred to above were included as income in plaintiff's income tax returned for 1936.

In 1941, when plaintiff filed its excess profits tax return it computed its excess profits tax credit on the average base period net income method, and the base period years, as hereinbefore noted, were 1936–1939. The income and excess profits taxes of plaintiff for 1941 were computed on that basis, as were the income and excess profits taxes for 1942, also here in question.

On January 19, 1945, plaintiff filed a claim for refund on form 843 with the Collector of Internal Revenue for the refund of 1941 taxes, and on August 29, 1945, plaintiff filed a claim for the refund of taxes for 1942. These claims were based on the inclusion of the aforementioned $1,349,269.76 as 1936 income for the purpose of determining plaintiff's excess profits tax credit for 1941 and 1942. The Commissioner denied both of the claims for refund, and on April 20, 1948, assessed deficiencies against plaintiff for the years 1941 and 1942 in the amounts of $57,123.19, plus interest of $21,370.33, and $36,590.43, respectively, which amounts, upon notice and demand, were duly paid by the plaintiff on August 26, 1948.

In assessing these deficiencies the defendant allowed plaintiff to include in its 1936 income for the purpose of computing its excess profits tax credit the

amount of $1,349,269.76, but in doing so the Commissioner applied the provisions of section 734 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 734.

Section 734 provides for an adjustment in excess profits taxes for the years in question where an item affecting the determination of the excess profits credit is treated, either by the taxpayer or the Commissioner, in a manner inconsistent with the treatment accorded such item in the determination of the income tax liability "for a prior taxable year or years," and where the correction for income tax purposes is prevented by the operation of some rule of law, such as the statute of limitations.

The adjustment is computed by first ascertaining the amount of the income taxes previously determined for each of the prior taxable years affected by the inconsistency and for which correction is prevented, such amount being the final amount of tax after all deficiencies, credits, and refunds. There is then ascertained the increase or decrease in the tax previously determined for each such year which results solely from the treatment of the item consistently with the treatment accorded such item in the determination of the excess profits tax liability. The aggregate increase or decrease in taxes for the years affected by the inconsistent treatment is then computed and that aggregate overassessment or deficiency is then added or subtracted from the tax for the excess profits tax years in question. In the case before us those years against which the aggregate would be applied are 1941 and 1942.

In the determination of the adjustment, interest in favor of the Government on increases in tax liability and of interest in favor of the taxpayer on decreases in tax liability are provided for. The interest is computed as though the increase or decrease constituted a deficiency or an overpayment for the earlier year. The section also provides that this interest is treated as income or as a deduction just as if it were receivable or payable on an overassessment or a deficiency.

A basic provision of the section, however, is that if the inconsistent position is maintained by the Commissioner, the net effect of the adjustment must be a decrease in the recomputed income taxes for the prior years, and if the inconsistent position is maintained by the taxpayer, the net effect of the adjustment must be an increase in the recomputed taxes for prior years. This, in effect, means that neither the Commissioner nor the taxpayer may obtain a tax benefit as a result of the inconsistent treatment of an item of income for excess profits tax purposes. The parties concede that the facts of this case require section 734 treatment, but there is a difference of opinion as to the interpretation and application of that section.

In applying the provisions of section 734 in plaintiff's case, and in considering plaintiff's claims for refund for the years 1941 and 1942, the Commissioner permitted plaintiff's request to include the sum total of the processing taxes which arose as the result of 1935 operations, $1,349,269.76, to be shifted from 1935 income to 1936 income. However, in computing the adjustment in tax liability for the years affected by the inconsistent treatment as required by section 734, he adjusted only for the years 1936 through 1938. No adjustment in the income taxes for 1939 was necessitated and this is conceded by the parties. The Commissioner's treatment resulted in an aggregate tax deficiency for the years 1936–1938 of $250,809.11, plus interest of $73,362.22, or a total of $324,171.33, of which amount $184,600.64 was applied against plaintiff's 1941 tax situation, and the balance of $139,570.69 was applied against plaintiff's 1942 tax situation. The interest of $73,362.22 was allowed as a deduction in 1943. Such application of the aggregate tax deficiency for the years 1936–1939 resulted in a tax deficiency for plaintiff for the years 1941 and 1942 in the amounts hereinbefore stated, and which were duly paid to the Commissioner of Internal Revenue.

Plaintiff contends that the adjustment should have taken into consideration the year 1935, since that year was also affected by the inconsistent treatment; the shifting of the item of income from 1935 to 1936. Plaintiff points out that because of the exclusion of the amount from its 1935 cost of goods sold, its 1935 taxes were increased. If that income is to be shifted from 1935 to 1936, plaintiff argues, it is inescapable that its 1935 tax situation would be affected by the inconsistent treatment. An overassessment for 1935 would be reflected by the shift. Plaintiff feels that if it is going to pay taxes on that amount in 1936, it should be credited with the taxes paid thereon in 1935, and argues that section 734 specifically provides for such treatment.

If plaintiff's position is sustained, a considerable overpayment would be reflected for 1935, which would reduce the net deficiency already determined for the years 1936–1938. The result would be that instead of plaintiff having a net deficiency of $324,171.33 to be applied to its 1941 and 1942 tax situation, it would only have a net deficiency of $80,258.45 (which includes interest on the deficiency of $14,934.42) which would be applied against plaintiff's 1941 tax situation. Because the plaintiff has already paid deficiencies assessed by the Commissioner as the result of the Commissioner's method of computing the adjustment under section 734, plaintiff would be entitled to a refund judgment.

Thus, the issue in the case when plaintiff brought suit was the interpretation and application of section 734. Should, under that section, the $1,349,-269.76 included in 1936 income for the computation of plaintiff's base period net income for excess profits tax purposes be excluded from 1935 income and the year 1935 be included in determining the amount of the adjustment which resulted from the inconsistent treatment?

As to this particular point, defendant argues that 1935 cannot be used in computing the adjustment since section 734 required only base period years to be used in that computation.

Before we get to that issue, however, we must first dispose of a contention of defendant raised for the first time on trial, to wit, that the Supreme Court decision in 1936 did not effectuate a return of processing taxes to plaintiff such as would constitute additional income for the base period year of 1936.

Plaintiff protests that raising such a defense at this late date would unduly prejudice it and points out that the contention of defendant is directly contrary to the expressions of the Commissioner of Internal Revenue contained in a ruling, I.T. 3064, directly contrary to a determination made by the Commissioner of tax due for the years here in question, which determination assessed a deficiency against plaintiff based upon the inclusion of the subject sum in the year 1936; directly contrary to a determination of an Excess Profits Tax Council panel in its determination that, because of the inclusion in 1936 income of the $1,349,269.76, the plaintiff would have to show additional abnormalities to be entitled to the section 722 relief applied for and, therefore, recommended denial of section 722 relief; and directly contrary to a statutory notice by the Excess Profits Tax Council to plaintiff approving the determination of the Council panel and denying section 722 relief. Plaintiff points out that because of the reason given by the Excess Profits Tax Council for denying section 722 relief, it (plaintiff) acted to its detriment by not pursuing the sought for section 722 relief further, that is, by appeal to the Council's determination to the Tax Court, which has the final say in section 722 matters. Section 722 relief is now closed to plaintiff. Because it so acted in reliance on the reasons given by the Council in denying section 722 relief, it feels that it is inequitable for the defendant to now assert the contention that the subject amount should never have been included in 1936 income at all. If the defendant is successful, were section

relief still available to plaintiff, it is possible that it would have received some relief thereunder.

We feel also, as the plaintiff must, that there should be some point at which a taxpayer can rely on determinations of the Commissioner of Internal Revenue and the Excess Profits Tax Council; a point at which the taxpayer can feel the issues have been struck and proceed thenceforward. That is what plaintiff herein apparently thought it was doing when it came into this court assuming that the only issue which needed to be resolved was the interpretation and application of section 734.

However, we are bound by the law as we find it and can only apply it as found. We feel that a considerable part of the subject sum is includible in 1936 income and deductible from 1935 income; but, we likewise feel, that there is a portion of the total sum which must, if we are to follow the precedents of the Supreme Court, be omitted from 1936 income and not deducted in 1935.

It is well settled that a taxpayer may not accrue as a deduction an expense when he is denying liability and refusing and contesting its payment. Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270; North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Consolidated Edison Co. of New York v. United States, 1955, 135 F.Supp. 881, 133 Ct.Cl. 376, certiorari denied, 1956, 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444; Chestnut Securities Company v. United States, 1945, 62 F.Supp. 574, 104 Ct.Cl. 489. The underlying reason for such a rule is that where the taxpayer has not paid the expense and is contesting it, he may never incur it, thus, it should not be deductible until it is incurred. The point of accrual in a contested liability case would be the year in which the court makes its determination.

It has also been held that where an amount is being contested, but has actually been paid, it may be deducted in the year of payment notwithstanding the fact that it is being contested because payment discharges the liability for the year of payment. Chestnut Securities Company v. United States, supra.

We covered this situation in Chestnut Securities Company, supra, 62 F.Supp. at page 576, 104 Ct.Cl. at page 494, wherein we stated as follows:

"* * * One is not entitled to accrue a debt or other liability which is asserted against him but which he disputes and litigates, until the litigation is concluded. But if a liability is asserted against him and he pays it, though under protest, and though he promptly begins litigation to get the money back, the status of the liability is that it has been discharged by payment. It is hardly conceivable that a liability asserted against him, which he has discharged by payment, has not yet 'accrued' within the meaning of the tax laws and the terminology of accounting. Accrual, from the debtor's standpoint, precedes payment, and does not survive it."

In a case on a parallel with the issues now before us, Security Flour Mills Co. v. Commissioner, supra, the taxpayer, in 1935, obtained an injunction against the collection of processing taxes, the court requiring as a condition of the granting of the injunction that the taxpayer pay the amount of the taxes into a depository designated by the court. On its 1935 income tax return, the taxpayer took deductions of the amount paid into the depository as taxes accrued in that year. The Court stated that the plaintiff therein was not entitled to the deductions in 1935. It said, 321 U.S. at page 284, 64 S.Ct. at page 598:

"* * * Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability."

Thus, the Supreme Court has ruled that amounts paid into escrow do

not constitute payment of the tax liability in the sense that the taxpayer should be allowed a deduction for an already paid contested liability.

█ In applying the above rules to the case at hand, we find that the entire amount of processing taxes accrued by the taxpayer on its books in 1935 which was attributable to its own processing operations, $227,640.73, as distinguished from the taxes it incurred as part of the purchase price of products it bought from its vendors, is excludible from 1936 income and not deductible in 1935. Liability for those taxes was being contested within the meaning of Dixie Pine Products Co., supra; North American Oil Consolidated, supra; Consolidated Edison Co. of New York, supra, and Chestnut Securities Company, supra, and was not paid within the meaning of the Security Flour Mills Co. case, supra.

█ It does not follow, however, that the balance of the subject amount of $1,349,269.76, i. e., $1,121,629.03, is not includible in 1936 income and correspondingly deductible in 1935. We hold that it is so includible and deductible.

The $1,121,629.03 referred to above represents that amount of taxes which was paid by plaintiff as part of the purchase price of processed products which plaintiff bought from its vendors, the processors. During 1935 plaintiff was fully liable for the purchase price to those vendors. Being on the accrual basis, it was thus entitled to accrue the entire amount of the purchase price paid for its products as part of its cost of goods sold. As to these particular taxes plaintiff was making no contest. The vendors on their own were, but they are entities separate from plaintiff. We do not feel that a liability contested by them can relate back to plaintiff with the conclusion that plaintiff was contesting the liability and, hence not entitled to the deduction in 1935 and the inclusion of a like amount in 1936 income. This is so, notwithstanding the fact that plaintiff had agreements with all of these vendors to the effect that, should the Supreme Court find the processing taxes unconstitutional, the amounts of processing taxes paid to the vendors as part of the purchase price would become the property of plaintiff, or be refunded or credited to it. The separate corporate entities were contesting the liabilities, not plaintiff.

This leads us to the next of defendant's contentions, also not raised by the Commissioner of Internal Revenue, but brought up by defendant for the first time on trial. Defendant contends that the National Milling Company, to whom the bulk of the money referred to in the immediately preceding two paragraphs was paid, some $1,078,950.60, was part of the plaintiff, not a separate organization, notwithstanding the fact that, in form, it had separate corporate life. This assertion is made because of the alleged close control exercised over National Milling by plaintiff. Defendant feels that because of this close control National Milling has been reduced to the status of a branch, rather than a subsidiary of plaintiff.

While the record does show that National Milling was treated by plaintiff somewhat on a par with its other branches, we find, after considering all the facts and circumstances, that the evidence is not sufficient to support a conclusion that it was a branch of plaintiff. The evidence shows that, while plaintiff exercised very close control over National Milling, it was, during the period in question, engaged in the same type of operations that it was engaged in prior to the time the company came under plaintiff's control some years prior. There had been no substantial change even though plaintiff had installed its own bookkeeping system and officers. The record also shows that it filed its 1934 and 1935 Federal income tax returns with the Internal Revenue Bureau as a separate corporate entity. Those returns were signed by officers of the National Milling Company and apparently the Commissioner of Internal Revenue did not feel at that time that it was a branch of plaintiff rather than a separate corporation.

Something more than this record contains must be shown before we can nullify the legal separateness of a corporation from its owner. Therefore, we cannot at this late date hold that National Milling Company was not at the time a separate corporate entity. The evidence of record is insufficient to pierce the corporate veil.

■ That part of our decision above which relates to the processing taxes paid into escrow by the plaintiff itself because of its own processing operations would appear to be in conflict with a ruling of the Commissioner of Internal Revenue designated I.T. 3064, 1937–1 Cum.Bull. 94. That ruling permitted the taxpayer to deduct in 1935 amounts of processing taxes paid into escrow and to add to income in 1936 the amount of the refunds. In so deciding, the Commissioner reasoned that no valid right to the reimbursement in question existed during the year 1935 which was enforceable during that year, but that the taxpayer's right to the reimbursement was contingent upon the happening of a future event which did not occur until January 6, 1936, when the Butler case, supra, was decided. In so holding, North American Oil Consolidated v. Burnet, supra, was cited.

North American Oil Consolidated does stand for the proposition that a taxpayer does not have to report as income an amount which it may never receive because of the possibility of an adverse decision by a court. However, the principle applies as well to a deduction, that is, a deduction cannot be taken until such time as it has been incurred. When it is being contested it has not been incurred and may never be if the court enters a decision of no liability. Also, when North American Oil Consolidated is read together with Security Flour Mills Co. v. Commissioner, supra; Dixie Pine Products Co. v. Commissioner, supra; Consolidated Edison Co. of New York v. United States, supra, and Chestnut Securities Company v. United States, supra, I.T. 3064 is apparently in error. While we do not pretend to say that it

was in error when issued in 1937, we do hold that since the decision of the above-cited cases, I.T. 3064 does not represent a correct application of prevailing law. Hence, plaintiff's arguments with respect to I.T. 3064 are of no avail.

■ Having disposed of these contentions of defendant, we now come to what we regard as the main issue in the case, that is, the interpretation and application of section 734 of the 1939 Internal Revenue Code.

_I_ J to this phase of the case, the only difference of opinion is whether or not 1935 should be taken into consideration in computing the adjustment to be made pursuant to section 734. The defendant argues that since 1935 is outside the base period it cannot be taken into consideration. However, the court is of a different view, since nowhere does section 734 specify that only base period years should be used in making the adjustment.

The language of section 734 in pertinent part is as follows:

"(b) Circumstances of adjustment.

"(1) If—

"(A) in determining at any time the tax of a taxpayer under this subchapter _an item affecting the determination of the excess profits credit is treated in a manner inconsistent with the treatment accorded such item in the determination of the income-tax liability_ of such taxpayer or a predecessor _for a prior taxable year or years,_ and

"(B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and

"(C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable

years is prevented (except for the provisions of section 3801 [I.R.C. 1939,]) by the operation of any law or rule of law (other than section 3761 [I.R.C.1939], relating to compromises),

then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination.

"(2) Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the net effect of the adjustment would be a decrease in the income taxes previously determined for such year or years) or by the taxpayer with respect to whom the determination is made (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the prior taxable year or years which was not correct under the law applicable to such year.

\* \* \* \* \* \*

"(d) Ascertainment of amount of adjustment. In computing the amount of an adjustment under this section *there shall first be ascertained the amount of the income taxes previously determined for each of the prior taxable years for which correction is prevented.* The amount of each such tax previously determined for each such taxable year shall be (1) the tax shown by the taxpayer, or by the predecessor, upon the return for such prior taxable year, increased by the amounts previously assessed (or collected without assessment) as deficiencies, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of

such tax; or (2) if no amount was shown as the tax by such taxpayer or such predecessor upon the return, or if no return was made by such taxpayer or such predecessor, then the amounts previously assessed (or collected without assessment) as deficiencies, but such amounts previously assessed, or collected without assessment, shall be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax. *There shall then be ascertained the increase or decrease in each such tax previously determined for each such year which results solely from the treatment of the item consistently with the treatment accorded such item in the determination of the tax liability under this subchapter.* \* \* \*" [Italic ours.]

If not explicit, it is certainly implicit in the language of these subsections that, where there is an inconsistent treatment of an item of income in order to compute the excess profits credit, then an adjustment shall be made which will take into consideration *all* the tax years affected by the inconsistent treatment in which correction of the effect of the inconsistent treatment is otherwise prevented by operation of law; 1935 is such a year. A close analysis of the subsections shows that this conclusion is correct.

Subsection (b) (1) provides that if there is, for the purpose of determining the excess profits credit of plaintiff, a treatment given an item of income which is inconsistent with the treatment "accorded such item in the determination of the income-tax liability \* \* \* for a prior taxable year or years," and if other provisions are met and correction is prevented by operation of law, then a "correction shall be made by adjustment under this section." Subsection (d) explains how to make that adjustment. It provides that "there shall first be ascertained the amount of the income taxes previously determined for *each* of the prior taxable years for which correction is prevented" (correction was

prevented for 1935), then the section provides there "shall than be ascertained the increase or decrease in *each* such tax previously determined for *each* such year *which results solely from the treatment of the item consistently with the treatment accorded such item in the determination of the tax liability under this subchapter.*" [Italic ours.] In the case before us, a treatment was given to the $1,121,629.03 for the computation of the excess profits tax credit which was inconsistent with its treatment in a prior taxable year, 1935. Thus, 1935 is a prior taxable year within the scope of section 734 and must be taken into consideration in computing the section 734 adjustment.

If there is any doubt that such language was intended to include 1935 in the computation of the adjustment, a reference to an example contained in the legislative history of section 734 is all that is needed to clarify that doubt. See House Report No. 146, 77th Cong., 1st Sess., section 11, page 17, and Senate Report No. 75, 77th Cong., 1st Sess., section 11, page 17. That example is too long to be fully set forth here, but in it the years 1934 and 1935, as well as 1936 and 1937, were taken into consideration in making the section 734 adjustment.

The Commissioner's regulations are of like effect, and also use an example similar to that used in the legislative history.

Section 35.734–2(b) of Regulations 112 provides as follows:

"The ascertainment of whether correction of the effect of the inconsistent treatment is prevented within the meaning [of section 734] * * * must be made with respect to *each* income tax for *each* prior taxable year affected by the erroneous treatment of the item or transaction." * * * [Italic ours.]

It can be seen, therefore, that there is nothing in the statute, the legislative history, or the Commissioner's regulations that restricts computation of the adjustment to the base period years.

There is little case law on this particular subject. However, the Government relies on Zellerbach Paper Co. v. Commissioner, 1947, 8 T.C. 511, to sustain its contention. This case does not support the Government's contention as it is distinguishable on the facts, and thus inapposite. That case related to the inconsistent treatment accorded a depreciation item which was incorrectly stated every year for several years, prior to the base period, as well as being erroneously stated during the base period years. The court held that only the base period years would be taken into consideration in computing the adjustment under section 734. Such treatment is not inconsistent with our decision in the instant case because an item of depreciation is a recurring annual item, a different item for each year. A change in the amount of a depreciation deduction for 1936, made to arrive at a correct excess profits credit, would not of itself affect the 1935 depreciation item or those of earlier years. It is not a situation of shifting income; that is, the shifting of an item of income from one year to the next as we have in the case before us. Our case involves a single item of income, not an annually recurring deduction. That item of income was shifted from 1935 to 1936, thus 1935 was directly affected by the inconsistent treatment in the base period year. That was not the situation in the Zellerbach Paper Co. case, where depreciation deduction for 1936 was changed. This of itself did not affect the depreciation deduction taken in 1935. Thus, 1935 was not affected by the inconsistent treatment of an item for the purpose of determining the excess profits tax credit.

We hold, therefore, that in computing the adjustment provided for in section 734, the facts of this particular case require the inclusion of 1935 in the computation. Such inclusion will reflect a refund due plaintiff for the years in question.

■ The last issue presented by this case involves the doctrine of equitable

recoupment and is raised by defendant. This doctrine specifies that a taxpayer should not recover from the Government refunds due it for a particular year to the extent that it has underpaid its taxes relating to the same transaction in a year which is barred by the statute of limitations. Conversely, it also provides that the Government should not be permitted to collect a deficiency for a particular year to the extent that a taxpayer has overpaid its taxes relating to the same transaction in a year which is barred by the statute of limitations. Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; as limited by Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296. See also Pond's Extract Co. v. United States, 1955, 134 F.Supp. 476, 133 Ct.Cl. 43.

 The cited cases show that the doctrine of equitable recoupment is available to both the taxpayer and the Government depending upon the particular fact situation. It was conceived of necessity by the requirement of fairness due to the danger of injustices resulting from the bar of the statute of limitations. It is really a case law exception to the statute of limitations where the application of the statute would work a palpable injustice. Pond's Extract Co. v. United States, supra. The doctrine is restricted, however, to situations in which a single transaction constituted the taxable event claimed upon and the one considered in recoupment. Rothensies v. Electric Storage Battery Co., supra, 329 U.S. at page 299, 67 S.Ct. at page 272. Thus, in order for the Government or the taxpayer in any case to have the doctrine of equitable recoupment applied, the offsetting amount from the year barred by the statute of limitations must result from the same transaction which gave rise to the refund or deficiency in the open year. To provide otherwise, every assessment of deficiency and each claim for refund would invite a search of the taxpayer's entire tax history for items

to recoup. This would in itself be inequitable, since statutes of limitation are, in their conclusive effects, designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared. Rothensies v. Electric Storage Battery Co., supra, 329 U.S. at pages 301 and 302, 67 S.Ct. at page 273.

With respect to the fairness of statutes of limitation, the Supreme Court in the Rothensies case continues as follows, 329 U.S. at page 301, 67 S.Ct. at page 273:

"* * * The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

 Based upon the decisions cited above, we are of the opinion that the doctrine of equitable recoupment applies in the instant case. There was only a single transaction or taxable event involved. Plaintiff's arguments against the applicability of the doctrine have been considered but they are without merit.

In the determination of the plaintiff's taxes for the years 1941 through 1945, the Commissioner used as an excess profits credit an amount that, on the basis of our decision as herein announced, becomes too great as the result of the erroneous inclusion of $227,640.73 in the base period income. Because the credit was thereby increased, plaintiff, in each of the years 1941 through 1945, received a benefit, by way of decreased taxes, in an amount proportionate to the excessive credit. Plaintiff also received a benefit because of the $73,362.22 allowed in 1943 as an interest deduction. That amount represented interest on the net deficiency computed by the Commissioner of Internal Revenue under section 734 for the years 1936–1938. Because we have decided that the tax year 1935 must

be taken into consideration in computing the section 734 adjustment, the net deficiency, and consequently the interest thereon, will be reduced.

As previously noted, by taking 1935 into consideration in computing the section 734 adjustment, a refund of taxes to plaintiff for the years in question will result. Against that refund, however, since the doctrine of equitable recoupment applies, there must be offset the amount of benefit the plaintiff received because of the overstated excess profits tax credit and because of the above-mentioned excessive interest deduction. It is impossible without the aid of detailed computations to say at this time how the application of the doctrine will affect the amount of recovery; however, it will considerably reduce it.

To recapitulate, we hold that the $227,-640.73 accrued on plaintiff's books in 1935 as the result of its own processing operations is not deductible in 1935 as a cost of goods sold and is not includible in 1936 income for the purpose of computing the excess profits tax credit; that the National Milling Company is a separate corporate entity and that amounts accrued by plaintiff representing processing taxes paid or due National Milling and other vendors in 1935 i. e., $1,121,629.03, is properly deductible in 1935 as part of the cost of goods sold, and includible as income in 1936 for the purpose of computing plaintiff's excess profits tax credit; that in computing the adjustment provided for by section 734 of the 1939 Internal Revenue Code the year 1935 must be included in the computation, such year showing as part of the cost of goods sold the aforementioned $1,121,629.03, but not the $227,-640.73; and, finally, that the doctrine of equitable recoupment is applicable in the instant case. In applying that doctrine, the excess profits tax credit will be adjusted in accordance with this opinion, to wit, the base period income will be decreased by $227,640.73, and the correct excess profits taxes for the years 1941 through 1945 will be determined. The excessive interest deduction taken in the

tax year 1943 will also be adjusted pursuant to the corrected section 734 adjustment. Any taxes thereby found not to have been previously paid by plaintiff will be offset against any recovery which would otherwise be due plaintiff because of the inclusion of the tax year 1935 in the section 734 adjustment computations.

The case will be remanded to the commissioner of this court for further proceedings pursuant to Rule 38(c), 28 U. S.C.A.

It is so ordered.

FAHY, Circuit Judge, sitting by designation; MADDEN, WHITAKER, and LITTLETON, Judges, concur.