396 F.2d 412
 68-1 USTC P 9423
 Eleanor M. LUTZ, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
E. W. LUTZ and Helen E. B. LUTZ, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Philip B. LUTZ and Shirley H. LUTZ, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 21439-21441.
 United States Court of Appeals Ninth Circuit.
 June 3, 1968.
 
 Donald C. Dahlgren (argued), of Skeel, McKelvy, Henke, Evenson & Uhlmann, Seattle, Wash., for appellants.
 Howard M. Koff (argued), Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D.C., Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Dept. of Justice, Lester Uretz, Chief Counsel, Internal Revenue Service, Washington, D.C., for appellee.
 Before JOHNSEN,* BARNES and ELY, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 Petitioners are members of a family partnership which engaged in the construction of military and residential housing in the State of Washington during its taxable years 1960 and 1962. The State of Washington has had at all times relevant hereto a retail sales tax. The amount of the tax on the partnership sales in its taxable year 1960 was $113,943.46, and in 1962 $215,465.96. Petitioners, reporting on the completed contract basis for federal income tax purposes, claimed their proportionate shares of the Washington tax as a deduction. The Commissioner disallowed the deduction, and the Tax Court upheld the Commissioner.[1] Petitioners have sought review here under 26 U.S.C. 7482.
 
 
 2
 The partnership construction projects which gave rise to the application of the Washington tax were both awarded under the Capehart Act of 1955 (42 U.S.C. 1594). Due to the fact that under the Capehart Act the housing facilities are owned by a corporation, the stock of which is ultimately owned by the Secretary of Defense, there was some question as to whether the Washington tax on the sale of such structures was lawful. Several other Capehart contractors, but not petitioners' partnership, challenged the tax by suit in a state court. The State of Washington notified the partnership that collection of the tax was being held in abeyance pending determination of the litigation, although returns were still required. This procedure was later made applicable to all Capehart contractors by a general administrative ruling. The partnership filed Washington State tax returns showing its sales as being to the federal government, and indicating that no sales tax was due. The Washington Tax Commission assessed the sales tax against the partnership, but payment was deferred pending the outcome of the litigation. Interest and penalties on the deferred payments were waived by the State. Later the partnership filed a bond for payment of these taxes with the Washington authorities. The tax was upheld by the trial court, and the Washington Supreme Court affirmed in August of 1963. Murray v. State, 62 Wash.2d 619, 384 P.2d 337 (1963). A writ of certiorari was denied by the Supreme Court of the United States. Inland Empire Builders, Inc. v. Washington, 378 U.S. 580, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964). Shortly thereafter the partnership paid all of the assessed Washington taxes in full.
 
 
 3
 In accounting for federal income taxes, the partnership accrued the Washington sales tax as an expense and showed the assessed amounts as a liability. It deducted the expense in the taxable year of the completion of the project to which the tax applied. The Commissioner denied the deduction for the years claimed by the petitioners, insisting that the expense was deductible only in the year in which it was paid. The year of the deduction is the sole issue on appeal.
 
 
 4
 As noted above, the Tax Court upheld the Commissioner's position. The basis for the Tax Court's decision was that the 'all events' test had not been satisfied for the taxable years 1960 and 1962 since the litigation had not finally ended until 1964. This 'all events' test was announced by the Supreme Court in United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347 (1926). The rule is basically that before an expense becomes deductible, all events which fix the amount and liability of the taxpayer must have occurred. As the Supreme Court explained in Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1944):
 
 
 5
 'It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer.'
 
 
 6
 The Tax Court found it unnecessary to decide whether the partnership was 'contesting' its liability because, in its view, irrespective of whether the partnership was contesting its liability the 'all events' test had not been satisfied. Inherent in this conclusion is the major premise that if anyone is contesting a liability similar in nature to a liability of the taxpayer, the taxpayer's liability remains contingent for federal income tax purposes until the contest is ended. We reject the premise as it applies to the facts of this case.
 
 
 7
 We can find no authority (and we have been cited to none) for the proposition that a third party's contest of liability makes a taxpayer's similar liability contingent. We recognize the fact that if the contestant is successful in voiding a tax the taxpayer might later be able to recoup his payment or avoid that liability. Such a possibility, we feel, is too remotely connected with the taxpayer to describe the liability as contingent.
 
 
 8
 We prefer the reasoning of Dravo Corp. v. United States, 348 F.2d 542, 172 Ct.Cl. 200 (1965). In 1953 Dravo filed a capital stock tax return with Pennsylvania authorities, which return was accepted. In 1956, however, the 1953 tax was reviewed and increased. Dravo paid the increase without protest. Dravo, however, filed an amended return of federal income taxes for the year 1953 and sought to deduct the 1956 additional payment. The Commissioner disallowed the additional deduction and Dravo sued for the refund. The Court of Claims upheld Dravo and ordered the refund.
 
 
 9
 'We do not think it proper to extend the concept of 'contest' to the instant situation where the only basis for such an extension is taxpayer's subjective motive as to what was intended when a return was filed. If a departure from the traditional concepts of proper accrula tax accounting is required by the fact of contest, it should be evidenced by taxpayer's objective acts; i.e., lodging a formal protest with the tax authorities or instituting a suit in a court of law. To conclude otherwise would ignore the principle of an uncontested tax, and equate actual contest with acquiescence without contest. But more important, in order that income may be clearly reflected for any taxable year, it is necessary to reflect the state tax liabilities for that year. When the liability is not disputed and the precise amount is later determined, it is in accordance with sound principles of accounting that the tax accrue in the year in which the liability occurred. The government's position would result in completely distorting taxpayer's income for the years 1956 and 1953.'
 
 
 10
 It is noteworthy that in the case at bar the government also seeks to effect a distortion of income figures.[2] There is no dispute that the Washington tax was on the Capehart contract sales. Those sales resulted in revenue which was properly returned in 1960 and 1962. To most accurately determine income requires that all expenses attributable to each contract be deducted in the year when the contract proceeds were reported as revenues. See American Institute of Certified Public Accounts, Accounting Research & Terminology Bulletins 28 (Final ed. 1961). It is apparent that, as the Court of Claims indicated in Dravo, adoption of a narrow interpretation of 'contest' within the meaning of Dixie Pine Products will lead to a more accurate and equitable determination of net income for the purposes of taxation.[3] We therefore conclude that a 'contest' requires a formal, direct challenge to the substance of the asserted liability, and that a taxpayer does not engage in a contest where he merely abides the outcome of litigation or protests prosecuted by others.[4]
 
 
 11
 As to the Tax Court's application of the 'all events' test of Anderson, we are unable to see how the litigation attacking the Washington tax could be said to have made petitioner's obligation to the State for the taxes during the period involved in any way contingent. The pendency of the suit did not affect the State's right to assess and collect the taxes. And petitioners would have had to make payment of them through this time, if the State had so insisted, since petitioners were not engaged in a contest as to the statute's validity.
 
 
 12
 Thus the outcome of the pending suit could not be said to have any 'all events' relationship to the question of petitioners' liability for the taxes as they were assessed. The suit could, of course, upon a subsequent favorable result, give rise to a defeasance of the liability created by the statute for each of such years, but this would not make the liability so existing a contingent one while the statute was operative.
 
 
 13
 In the reflection of petitioners' income as to this period of actually existing liability, the requirement of Dixie Pine Products would be satisfied, that 'all the events must occur in that year which fixed the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid'. The desire of the State here for purposes of its own not to have the petitioners pay the assessed taxes immediately was a mere postponement of payment and not a change as to the existing obligation and liability. Petitioners no less owed the taxes from and as of the time of their assessment, since the State could have demanded and enforced payment against them had it chosen to do so, unless petitioners engaged in a contest.
 
 
 14
 The judgment of the Tax Court is reversed.
 
 ELY, Circuit Judge (dissenting):
 
 15
 I respectfully dissent. While I agree that the Tax Court erred in its major legal premise, I nevertheless believe that it reached the proper result.
 
 
 16
 The Tax Court held that the petitioners' partnership had not satisfied the 'all events' test with regard to the accrual of certain state retail sales tax liabilities in 1960 and 1962 and that therefore no deduction for federal income tax purposes could be taken in those years for the liabilities in question. Eleanor M. Lutz, 45 T.C. 615 (1966). The United States Supreme Court has explained the all events test as follows:
 
 
 17
 'It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer.'
 
 
 18
 Dixie Pine Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1943). Similarly, the Supreme Court has also stated 'that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting.' Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 284, 64 S.Ct. 596, 597, 88 L.Ed. 725 (1943); accord, United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1960). See generally Freeman, Tax Accrual Accounting for Contested Items, 56 Mich.L.Rev. 727 (1958); Holland, Accrual Problems in Tax Accounting, 48 Mich.L.Rev. 149 (1949). In accord with these Supreme Court decisions, a number of cases in the lower federal courts have developed, in a specific manner, the concept of a 'contest.' See, e.g., Dravo Corp. v. United States, 348 F.2d 542, 172 Ct.Cl. 200 (1965); Southwest Exploration Co. v. Riddell, 232 F.Supp. 13 (S.D.Cal. 1964), aff'd, 362 F.2d 833 (9th Cir. 1966). These developments, as to this aspect of the all events rule, have been based on the rationale indicated by the Supreme Court in Dixie Pine: 'Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do.' 320 U.S. at 519, 64 S.Ct. at 365.
 
 
 19
 Here the Tax Court held that it was unnecessary to determine whether the petitioners' 'actions brought the situation within the 'contest' concept so as to deny accrual * * *.' In fact, the court stated that this issue 'would be difficult to answer * * *.' 45 T.C. at 628. Rather, the Tax Court held that 'the more basic 'all events' test' was not satisfied due to the fact that other similarly situated taxpayers were contesting the constitutionality of the state sales tax. The court explained:
 
 
 20
 'Absent the partnership's concession that the tax was applicable to its income from the Capehart contracts, this legal question could not be answered until the termination of the litigation which was instituted for the very purpose of determining whether the tax was applicable, not only to the income of the litigating contractors but to the income of all the Capehart contractors, including the partnership.'
 
 
 21
 45 T.C. at 628. I believe, in agreement with the majority opinion, that in relying upon this rationale to reach its result, the Tax Court proceeded upon an erroneous basis.
 
 
 22
 Where the determinative event under the all events test is the existence of a contest regarding an asserted liability, the proper question is whether the taxpayer seeking to accrue the asserted liability can be held to be contesting the liability himself. I cannot accept the rule apparently propounded by the Tax Court, under which an asserted liability would be held to be contingent and thus nondeductible where another person was contesting a similar liability, regardless of the complete absence of any affirmative manifestation of a contest on the part of the individual taxpayer claiming the tax deduction. Such a rule would play havoc not only with the commonly accepted methods of accrual accounting, but also with the orderly determination of income tax liabilities. It is possible to conceive of situations in which extremely large numbers of accrual-method taxpayers would thereby be affected by a suit, of which they might initially have no knowledge, challenging the validity of an asserted liability common to them all. Additionally, the courts would be forced to undertake at least a limited evaluation of such a suit, since presumably they would not deny the deduction of an asserted liability simply on the basis of some frivolous action instituted by an unrelated, but similarly situated, person. Furthermore, in no case has the Supreme Court indicated that the all events test applies so as to deny a deduction because the liability is contested. except where the taxpayer himself was one of the contesting parties. At the same time, a number of other courts have indicated that the actions of a third party do not, by themselves, determine the accrual status of a liability asserted against the taxpayer. See Freihofer Baking Co. v. Commissioner of Internal Revenue, 151 F.2d 383 (3d Cir.1945); National Biscuit Co. v. United States, 156 F.Supp. 916, 140 Ct.Cl. 443 (1957); Pittsburgh Hotels Co. v. United States, 63 Ct.Cl. 475, cert. denied, 275 U.S. 546, 48 S.Ct. 84, 72 L.Ed. 418 (1927); Denise Coal Co., 29 T.C. 528 (1957), reversed in part on other grounds, 271 F.2d 930 (3d Cir. 1959). See also Baltimore Transfer Co., 8 T.C. 1 (1947).
 
 
 23
 This conclusion finds support in recent Congressional action which followed United States v. Consolidated Edison Co., supra. In that case, the Supreme Court held that actual payment of a contested liability is not sufficient to allow accrual of that liability as a deduction prior to the termination of the contest, whereupon, Congress, in 1964, added section 461(f) to the Internal Revenue Code of 1954. The section provides:
 
 
 24
 '(f) Contested liabilities.-- If--
 
 
 25
 (1) the taxpayer contests an asserted liability,
 
 
 26
 (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
 
 
 27
 (3) the contest with respect to the asserted liability exists after the time of the transfer, and
 
 
 28
 (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year), then the deduction shall be allowed for the taxable year of the transfer.'
 
 
 29
 This section cannot be applied to our case, since the taxpayer made no payment of the Washington sales taxes prior to the termination of the litigation involving the validity of the state levy. The section is relevant, however, in that it evidences the Congressional understanding of applicable law. Obviously, Congress intended to provide taht if the all events test is not satisfied because of a contest, accrual should nevertheless occur if payment should have been made. It is also apparent that Congress contemplated that, when the event in questions is a contest, accrual should be denied only when 'the taxpayer contests * * *.' Otherwise, a truly anomalous situation would exist. If one taxpayer contested, but also made payment of the asserted liability, then accrual would be allowed at the time of the transfer. Under the Tax Court's view, however, it would also be possible to have a situation where another similarly situated taxpayer did not contest, but was nevertheless denied the right to accrue the liability because of the first taxpayer's contest. Yet, under the terms of the statute, this latter taxpayer would be denied the right to accrue, even upon payment, since the statute would not apply, and the Consolidated Edison holding would control. Admittedly, this would be extremely inequitable, and the Tax Court, I suspect, would find a way to resolve the incongruity. My hypothetical case, however, is put to emphasize that the Tax Court's reasoning leads beyond the contemplation of Congress during its most recent examination into this area of the law.[1]
 
 
 30
 Thus the question here is whether it can be said that, on the basis of the facts found by the Tax Court, the petitioners were themselves 'contesting' the state retail sales tax.[2] A finding of a contest cannot be based solely upon belief as to the taxpayer's subjective motive in regard to the asserted liability. Dravo Corp. v. United States, supra. However, when the circumstances as a whole indicate that the subjective motive was in fact to contest the liability and when, in addition, there are objective acts which confirm the motive, there is sufficient support for the finding of a contest. See Dravo Corp. v. United States, supra; Southwest Exploration Co. v. Riddell, supra; Agency of Canadian Car & Foundry Co., 39 T.C. 15 (1962); Gunderson Bros. Eng. Corp., 16 T.C. 118 (1951); Great Island Holding Corp., 5 T.C. 150 (1945). Furthermore, a rigid construction which unduly emphasizes the importance of one specific formal act fails to take sufficient account of the purpose behind the all events test. The rule is not designed to penalize those taxpayers who openly and legally question an asserted liability and reward those who proceed covertly. Rather, the rule is designed to implement sound accounting principles so as to achieve a reasonable, uniform rule for the accrual of asserted liabilities. This purpose is not fulfilled when accrual of a deduction is denied to one taxpayer who has come forward to litigate an asserted liability, while accrual is granted to other similarly situated taxpayers who, although they have waited for another to take the first formal step, have nevertheless evidenced the fact of a challenge on their part also. In both cases there is sufficient reason to hold that the taxpayer may not adopt a dual approach to the liability, claiming on the one hand that it is certain while indicating on the other hand that it is not an enforceable liability at all.
 
 
 31
 Here, I would hold that petitioners were in fact contesting the state retail sales tax and thereby fall within the ambit of the all events rule. During 1957 several contractors on Capehart Act construction projects in the State of Washington submitted to the Washington Tax Commission the question of the applicability of the state retail sales tax to Capehart construction projects. In December 1957 the office of the state attorney general advised the Tax Commission that the sales tax was applicable to these projects. Subsequently, in April of 1959, the state attorney general again issued an opinion advising that the state sales tax applied to the contracts in question. Following this second opinion, the Tax Commission on its own behalf reached the same conclusion; however, the Commission decided to hold collection of the tax in abeyance due to its expectation that litigation concerning the issue would arise. Finally, in the spring of 1960, four Capehart contractors filed suits contesting application of the sales tax to their projects. This litigation in the state courts terminated with the decision of the Washington Supreme Court on August 1, 1963, holding that the tax did apply to these federal construction projects. Murray v. State, 62 Wash.2d 619, 384 P.2d 337 (1963). On June 22, 1964, the United States Supreme Court denied certiorari. Inland Empire Builders, Inc. v. Washington, 378 U.S. 580, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964).
 
 
 32
 Within this structure the petitioners' actions must be examined. Their family partnership was granted two Capehart contracts by the United States, one on August 21, 1958, and the other on May 10, 1960. These contracts were to be completed in the years 1960 and 1962, respectively, and the petitioners chose to report their income from the projects under the completed contract method of tax accounting. See Treas.Reg. 1.451-3(b)(2). Shortly after the granting of their first Capehart contract and prior to filing their first state excise tax return, petitioners requested authority from the state to hold their payments of the state retail sales tax in abeyance. This authority was granted by the state attorney general on September 30, 1958. This request was made prior to the institution of the litigation by the other contractors and also prior to the issuance of the second opinion by the state attorney general regarding the applicability of the sales taxes. At this time the Commission was studying the issue and had indicated to all of the Capehart contractors that such requests for deferred payment would be favorably considered.[3] Following both the request and the later general administrative rulings of the Tax Commission, the Commission issued assessments for the proper amount of taxes to the Capehart contractors, but on a deferred payment basis.
 
 
 33
 Subsequently, on the balance sheet included in the partnership's federal income tax information return filed for the year ending on January 31, 1960, the partnership included the amount of the assessments as a liability and attached the notation that 'the item * * * represents sales tax claimed by the State of Washington in connection with a Government Capehart Construction project which tax payer is contesting.' At the trial one of the petitioners testified that this notation was inserted merely to explain why the liability was unpaid when it appeared that the partnership had sufficient resources to make payment. This petitioner further admitted that at this time the partnership was considering whether to join in the litigation proposed by the other contractors, adding that the partnership later decided not to join and thus participate directly. The partnership's attorney had advised against such a course and had stated that if the partnership decided in the future to contest the sales tax, 'other avenues of following through' were available, such as filing a protest against the state assessments, or paying the tax and then suing for a refund.
 
 
 34
 As I have already noted, in May 1960, subsequent to the institution of the litigation, the Tax Commission issued a general administrative ruling announcing that collection of the sales tax on the Capehart contracts involved in the suit, as well as on any similar Capehart contracts, would be held in abeyance pending judicial determination of the litigation. The Tax Court explained:
 
 
 35
 'In arriving at this decision officials of the State Tax Commission were influenced by several factors including the fact that large sums of money were involved, that if collections were made and a refund later required there might be an extensive impact on the general funds of the State, and that issuance of a refund would require payment of interest to the taxpayer.'
 
 
 36
 45 T.C. at 620. In March 1961, however, the Commission revoked this general abeyance ruling because several of the contractors had completed their projects and had begun proceedings for voluntary dissolution of their corporations. In place of the previous ruling, the Commission indicated to the contractors that it would in the future approach the question of abeyance on an individual basis. The Commission.
 
 
 37
 07'stated that it would continue to hold collection of the tax in abeyance only in those cases where it could ascertain that further deferment would not place collection of the tax in jeopardy. This later ruling further provided that abeyance orders would be granted only upon receiving petitions from individual taxpayers. Pursuant to such ruling, on March 21, 1961, the partnership filed a petiton requesting in writing that the Tax Commission hold collection of the retail sales tax on its first contract in abeyance pending the outcome of the existing litigation.
 
 
 38
 'The State Tax Commission replied to this request on April 5, 1961, and indicated that continued abeyance and collection of the taxes due on the first contract would be considered only if adequate bond was posted.'
 
 
 39
 45 T.C. at 621. Thereafter, on April 17, 1961, the partnership offered to the Commission a form of a personal bond in an amount greater than the amount of the sales tax due on the first contract. This bond was accepted. Subsequently, when the Commission issued an assessment for the sales tax due on the partnership's second Capehart contract, 'the partnership filed a petition similar to that filed with respect to the first contract requesting the State Tax Commission to hold collection of the assessment in abeyance pending outcome of the litigation.' 45 T.C. at 622. A bond for this second contract was accepted by the Commission in December 1961.
 
 
 40
 In August 1963, after the decision of the Washington Supreme Court, one of the partners and the partnership's attorney met with a representative of the Commission and offered to make immediate payment of all the sales taxes due to the state. The Commission, however, indicated that it did not desire that payment be made until final settlement of the litigation and that interest and penalties would continue to be waived until such time as payment was demanded by the Commission. This position was later confirmed by a letter to the partnership, Finally, in July 1964, following the denial of certiorari by the United States Supreme Court, the partnership made full payment of the taxes due to the state.
 
 
 41
 It is seen, therefore, that the actions taken by the partnership generally related to the time of payment of the state tax liabilities that petitioners had accrued on their books as a liability. The mere fact of payment or nonpayment is not determinative with regard to the time of accrual of a deduction. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). This fact, however, does not mean that the circumstances surrounding nonpayment may not be looked to in order to determine when accrual should occur. Cf. United States v. Consolidated Edison Co., supra. In the present case these circumstances persuasively indicate that petitioners were contesting the applicability of the state sales tax to their Capehart contracts. The partnership did not join in, or contribute to, the litigation undertaken by the other Capehart contractors. Nor did the partnership file any formal protest with the Washington Tax Commission. Due to the cooperative attitude of the Commission, it was not necessary that such formal action be taken by the partnership. Prior to the actual commencement of the litigation, however, the partnership had requested that its own tax payments be held in abeyance. When viewed in conjunction with the petitioners' subsequent actions, and in particular when viewed in conjunction with the posting of the personal bonds, this action demonstrates that the partnership allied itself with the litigation, both at the time it was proposed and after it was instituted. I am convinced that, in an informal but nevertheless meaningful manner, the partnership was contesting the applicability of the state sales tax.[4]
 
 
 42
 As the majority opinion points out, the result reached by the Tax Court would cause a distortion of the petitioners' income under their completed contract method of reporting income.[5] This is true, and it perhaps indicates the need for further Congressional legislation in this area. Presently, however, we should follow the Supreme Court's endorsement of
 
 
 43
 'the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer.'
 
 
 44
 Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 285-286, 64 S.Ct. 596, 598, 88 L.Ed. 725 (1943).
 
 
 45
 I would affirm the decision of the Tax Court.
 
 
 
 *
 Hon. Harvey M. Johnsen, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 45 T.C. 615 (1966)
 
 
 [2]
 Perhaps this is why the Tax Court 'rather reluctantly' upheld the Commissioner's determination. See 45 T.C. 615, 629
 
 
 [3]
 We note that in 1964 Congress permitted deduction in some instances of contested liabilities by enacting section 223(a)(1) of the Revenue Act of 1964, 78 Stat. 19, 76, U.S.C. 461(f)
 
 
 [4]
 Respondent Commissioner can hardly complain that our conclusion allows the taxpayer to distort income in light of his powers under 26 U.S.C. 446(b)
 
 
 [1]
 Section 461(f) is also relevant as to the Tax Court's indication that it would be necessary for the partnership to have conceded that the sales tax was applicable to its contracts in order to avoid the effect of the litigation instituted by the other contractors. In this connection the court stated that the partnership 'could have at any time paid the tax and waived any right to recover the same, regardless of the outcome of the litigation * * *.' 45 T.C. at 628. Since the section allows accrual at the time of payment, any requirement of an affirmative waiver in addition to payment would be meaningless. Such is the case in the present situation, since section 461(f) is retroactive in its effect. Act of Feb. 26, 1964, Pub.L. No. 88-272, 223(c), 78 Stat. 76
 
 
 [2]
 Despite its statement that it was not necessary to find whether appellants had come within the contest concept, it may be that the Tax Court did embark, to a limited extent, upon just such an inquiry. At one point the court stated that it thought 'there was a good faith dispute between the State taxing authorities and all the Capehart contractors as to whether a tax was due on the proceeds of these contracts.' 45 T.C. at 628. Furthermore, the court concluded as follows: 'So whether we consider the partnership a de facto contestant or a noncontestant, we cannot agree that all events had occurred within the taxable years here involved * * *.' 45 T.C. at 629. It seems, therefore, that the Tax Court may also have considered appellants to have been 'de facto' contestants
 
 
 [3]
 In a deposition introduced at the trial, the Secretary of the Washington Tax Commission testified that he believed that all of the Capehart contractors had made such requests and that all of the requests had been granted. The Secretary also stated that during the years 1957-1961, there were, to his knowledge, six Capehart construction contracts outstanding in the state
 
 
 [4]
 The fact that the sales tax was ultimately held to be a valid one as applied to the Capehart contractors does not affect the result here. While Dixie Pine and Security Flour Mills involved situations where the taxpayer had prevailed in his contest against the asserted liability and therefore never had to pay it, in Consolidated Edison the taxpayer lost his contest to the extent of the major part of the liability in questoion. In all three cases the Supreme Court held accrual to be proper only after termination of the contest
 
 
 [5]
 In addition to the contentions discussed above, the petitioners have asserted that the all events rule does not apply to the completed contract method of reporting income, in view of the fact that it is a modification of the strict accrual method. This assertion was rejected by the Tax Court. 45 T.C. at 625. In the alternative, petitioners have also contended that their partnership held the amounts of the sales taxes in trust for the state. In view of the conclusion reached by the majority opinion, no useful purpose would be served by my discussion of these issues here